SUPREME COURT OF ARIZONA

STATE OF ARIZONA,                    )     Arizona Supreme Court
                                     )     No.  CR-98-0488-AP
                        Appellee,)
                                     )     Pinal County
             v.                      )     Superior Court
                                     )     No.  CR-96-021235
ARTURO ANDA CAÑEZ,                   )
                                     )
                        Appellant.)        **SUPPLEMENTAL OPINION**
_____    )

Appeal from the Superior Court in Pinal County
The Honorable Boyd T. Johnson, Judge

**VACATED AND REMANDED**

JANET A. NAPOLITANO, ARIZONA ATTORNEY GENERAL            Phoenix
     by   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and  Robert L. Ellman, Assistant Attorney General
     and  James P. Beene, Assistant Attorney General
     and  John P. Todd, Assistant Attorney General
     and  Bruce M. Ferg, Assistant Attorney General       Tucson
Attorneys for Appellee

Thomas J. Phalen                                          Phoenix
and
Tara K. Allen                                               Tempe
Attorneys for Appellant

**B E R C H**, Justice

¶1      Arturo  Anda  Cañez  was  sentenced  to  death  under  a
procedure found unconstitutional in *Ring v. Arizona*, 536 U.S. 584,
122 S. Ct. 2428 (2002) (*Ring II*).   In *Ring II*, the Supreme Court
held  that  Arizona's  capital  sentencing  scheme  violated  the
defendant's Sixth Amendment right to a jury trial.   *Id.* at 609, 122

S. Ct. at 2443. In doing so, the Court held that defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589, 122 S. Ct. at 2432. The Court remanded the case for further proceedings consistent with its decision.

¶2 On remand, we consolidated all cases, including Cañez's, in which the death penalty had been imposed but the mandate had not yet issued from this court to determine whether *Ring II* required reversal or vacatur of the death sentences. *State v. Ring*, ___ Ariz. ___, ___, ¶¶ 5-6, 65 P.3d 915, 925 (2003) (*Ring III*). We concluded that we must review each death sentence imposed in these cases under Arizona's superseded capital sentencing statutes for harmless error. *Id.* at ___, ¶ 53, 65 P.3d at 936.

¶3 We now consider whether the death sentence imposed on Cañez can stand in light of *Ring II* and *Ring III*, as well as the Supreme Court's decision in *Atkins v. Virginia*, which held that the Eighth Amendment of the United States Constitution poses a constitutional bar to the execution of mentally retarded persons. 536 U.S. 304, 321, 122 S. Ct. 2242, 2252 (2002).

**FACTS AND PROCEDURAL HISTORY**

¶4 On February 5, 1998, a jury found Arturo Anda Cañez guilty of felony murder, first degree burglary, and two counts of armed robbery. *State v. Cañez*, 202 Ariz. 133, 145, ¶ 15, 42 P.3d 564, 576 (2002). Following a sentencing hearing, the trial judge

-2-

found that the State had proved the following four aggravating circumstances beyond a reasonable doubt, rendering Cañez eligible to receive the death sentence: (1) Cañez had been convicted of four prior serious offenses, Ariz. Rev. Stat. ("A.R.S.") § 13-703(F)(2), (H)(1) (Supp. 1996); (2) the victim was at least seventy years old at the time of the crime, *id.* § 13-703(F)(9); (3) the murder was committed in expectation of pecuniary gain, *id.* § 13-703(F)(5); and (4) the offense was committed in an especially heinous, cruel, or depraved manner, *id.* § 13-703(F)(6). *Cañez*, 202 Ariz. at 157-62, ¶¶ 83-109, 42 P.3d at 588-93. The trial judge found that Cañez failed to prove the statutory mitigating circumstance of significant mental impairment, A.R.S. § 13-703(G)(1), and that "the cumulative effect of all of the mitigation offered by the defendant . . . [was] not sufficiently substantial to call for leniency." *Cañez*, 202 Ariz. at 162, 165, ¶¶ 111, 125, 42 P.3d at 593, 596. He therefore sentenced Cañez to death. We affirmed Cañez's conviction and death sentence on direct appeal. *Id.* at 165, ¶ 126, 42 P.3d at 596.

### DISCUSSION

**A.** *Ring II* **Error**

¶5        In *Ring III*, we concluded that judicial fact-finding in the capital sentencing process may constitute harmless error if we can conclude beyond a reasonable doubt that no reasonable jury would fail to find the aggravating circumstance. ___ Ariz. at ___,

¶¶ 53, 103, 65 P.3d at 936, 946.  We now examine whether the *Ring II* error was harmless with respect to each of the aggravating circumstances found by the trial judge in Cañez's case.

     1.   <u>Aggravating Circumstances</u>

     *a.   Prior Serious Convictions*

**¶6**     Arizona law provides that a conviction for a prior serious offense constitutes an aggravating circumstance that renders a defendant eligible to receive the death penalty.  A.R.S. § 13-703(F)(2).  The trial judge found that the State had proved beyond a reasonable doubt that Cañez had four prior felony convictions.  *Cañez*, 202 Ariz. at 157, ¶ 84, 42 P.3d at 588.  Cañez did not contest that these felonies qualify as serious offenses.  *Id.* ¶ 83.  In *Ring III*, we held that "the Sixth Amendment does not require a jury to determine prior convictions under sections 13-703.F.1 and F.2."  ___ Ariz. at ___, ¶ 55, 65 P.3d at 936-37.  Accordingly, we affirm the trial judge's finding that the State proved the aggravating circumstance of four prior serious felony convictions.

     *b.   Elderly Victim*

**¶7**     An aggravating circumstance exists if at the time the murder was committed, "the murdered person was . . . seventy years of age or older."  A.R.S. § 13-703(F)(9).  The trial judge found that the State proved beyond a reasonable doubt that the victim was at least seventy years old at the time the murder was committed.

-4-

*Cañez*, 202 Ariz. at 158-59, ¶ 90, 42 P.3d at 589-90.

¶8        In *Ring III*, we held that *Ring II* error in the finding of the (F)(9) aggravator will be harmless if (1) the jury also convicted the defendant of an "age-dependent crime committed against the murder victim," *Ring III*, ___ Ariz. at ___, ¶ 86, 65 P.3d at 942; (2) the defendant stipulated to the victim's age; or (3) overwhelming evidence established the victim's age.  *Id.*

¶9        The jury did not convict Cañez of an age-dependent crime, nor did Cañez stipulate to the victim's age.  However, the evidence presented concerning the victim's age was overwhelming and uncontroverted.  Cañez neither objected to nor controverted the testimony of the victim's son that the victim was born on June 26, 1918, nor did he contest that the crime was committed on February 22, 1996.  This testimony was corroborated by a birth certificate, photographs of the victim's body, and testimony by the coroner that the autopsy results were consistent with the body of a 77-year-old man.  Although Cañez objected to the admission of the victim's birth certificate on authentication grounds, that objection was overruled, and Cañez did not present any evidence that controverted the validity of the birth date contained on the document. Based on the foregoing, we conclude beyond a reasonable doubt that no reasonable jury presented with this evidence could fail to find that the victim was more than seventy years old at the time of the crime.  Therefore, the trial judge's finding that the State proved

the (F)(9) aggravating factor beyond a reasonable doubt is harmless error.

        *c.    Pecuniary Gain*

**¶10**      The commission of an offense "in expectation of the receipt . . . of anything of pecuniary value" is an aggravating circumstance under Arizona law.  A.R.S. § 13-703(F)(5).  The finding of pecuniary gain "requires more than the jury's conviction of a defendant for first degree murder and robbery or burglary." *Ring III*, ___ Ariz. at ___, ¶ 78, 65 P.3d at 941.  The State must also prove that the expectation of pecuniary gain was a "motive, cause, or impetus for the murder and not merely the result of the murder."  *Id.* ¶ 77 (quoting *State v. Kayer*, 194 Ariz. 423, 433, ¶ 32, 984 P.2d 31, 41 (1999)).  We cannot affirm the trial judge's pecuniary gain finding unless we are convinced beyond a reasonable doubt that no reasonable jury could fail to find that the State proved pecuniary gain beyond a reasonable doubt.  *Id.* ¶ 79.

**¶11**      The trial judge found that "the offense was motivated by the desire for pecuniary gain," "the objective was the robbery of the victim," and "the death occurred in the course of and in furtherance of the defendant's efforts to obtain the victim's property."  *Cañez*, 202 Ariz. at 159, ¶ 91, 42 P.3d at 590.  The judge's findings were primarily based on the pretrial statements and trial testimony of Brian Patterson, a co-defendant, who had entered into a plea agreement with the State in exchange for his

testimony.  At trial, Patterson alternatively denied the validity of three separate and conflicting prior statements about the events on the night of the murder or stated that he could not recall making them.

¶12    The pecuniary gain finding rested heavily on the trial judge's assessment of Patterson's credibility and a determination of which portions of his testimony were true.  We cannot say beyond a reasonable doubt that a reasonable jury considering Patterson's testimony and pretrial statements in the context of determining whether Cañez's expectation of pecuniary gain was a motive, cause, or impetus for the murder, would accord them the same weight or come to the same conclusions as did the trial judge.  Therefore, we conclude that the *Ring II* error as to the (F)(5) aggravating circumstance was not harmless.

> d.    *Especially Heinous, Cruel, or Depraved*

¶13    That a murder is committed in an especially heinous, cruel, or depraved manner is an aggravating factor under Arizona law.  A.R.S. § 13-703(F)(6).  The State must prove only one of these factors to establish the (F)(6) aggravating factor. *State v. Gretzler*, 135 Ariz. 42, 51, 659 P.2d 1, 10 (1983).  The trial judge found the murder especially cruel, as well as heinous or depraved. *See Cañez*, 202 Ariz. at 160, ¶ 99, 42 P.3d at 591.  On direct appeal we affirmed the finding that the murder was especially cruel, but found the evidence insufficient to support the findings

of heinousness and depravity. *See id.* at 161-62, ¶¶ 104-09, 42 P.3d at 592-93. We therefore analyze only the cruelty factor.

**¶14** The cruelty factor is established by proof that the manner of death caused the victim to suffer mental and physical anguish, *see Gretzler*, 135 Ariz. at 51, 659 P.2d at 10, "and the defendant knew or should have known that suffering would occur." *State v. Trostle*, 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997) (citations omitted).

**¶15** The trial judge based his cruelty finding on evidence that the victim was conscious when Cañez first stabbed him and remained at least partially conscious through the attempted strangulation and beating. Cañez argued that the evidence did not establish that the victim remained conscious during the attack. Indeed, the medical examiner testified that she could not determine the order in which the injuries were inflicted and that any of the ten blunt force injuries to the head could have resulted in immediate unconsciousness. We cannot say beyond a reasonable doubt that a reasonable jury hearing this evidence would necessarily conclude that the victim remained partially conscious after the initial attack and therefore find the murder was cruel.

**¶16** Because we cannot say, beyond a reasonable doubt, that a reasonable jury hearing the evidence would find that the murder was especially cruel, we conclude that the *Ring II* error was not harmless with respect to the (F)(6) aggravating factor.

2.  <u>Mitigating Circumstances</u>

¶**17**    Our harmless error inquiry does not end with an examination of the aggravating circumstances.  Because we can affirm a capital sentence only if we can conclude beyond a reasonable doubt "that no rational trier of fact would determine that the mitigating circumstances were sufficiently substantial to call for leniency," we must also consider whether reversible error occurred with respect to the mitigating circumstances.  *Ring III*, ___ Ariz. at ___, ¶ 104, 65 P.3d at 946.

*a.    Statutory Mitigation*

¶**18**    It is a statutory mitigating factor that a "defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired."  A.R.S. § 13-703(G)(1).  Cañez sought to establish the (G)(1) factor by demonstrating that he was mentally retarded, was on medication for seizures, suffered a depressive disorder, exhibited symptoms of brain damage, was a drug addict, and was intoxicated at the time of the offense.  *Cañez*, 202 Ariz. at 162, ¶ 111, 42 P.3d at 593.

¶**19**    Cañez presented evidence that his full-scale IQ was 70, placing him on the borderline of mental retardation.  However, three psychological experts offered conflicting testimony concerning Cañez's adaptive abilities.  Cañez's first expert, Dr. Tatro, testified that Cañez had "borderline personality disorder

with antisocial features, intermittent explosive personality disorder, depressive disorder recurrent, and possible organic brain syndrome." *Id.* at 163, ¶ 113, 42 P.3d at 594. Cañez's second expert, Dr. Blackwood, found some indication of organic brain damage, but suggested that Cañez may not have been trying to do well on the tests. *Id.* The State's expert, Dr. Youngjohn, testified that he found no evidence of mental illness or brain damage, but diagnosed antisocial personality disorder and psychopathic personality disorder. *Id.* The trial judge accorded more weight to the State's expert and concluded that Cañez failed to prove he was significantly impaired for purposes of mitigation. *Id.* ¶ 114.

¶20 On direct appeal, we noted that the evidence of brain damage, mental illness, and retardation was conflicting. *Id.* ¶ 113. Nevertheless, we upheld the trial court's finding that Cañez failed to establish the (G)(1) factor because we accorded great deference to the trial judge's conclusions concerning the weight to be given to the various expert testimony. *Id.* ¶ 114. Because this finding rests so heavily on the trial judge's assessment of witness credibility, we cannot say beyond a reasonable doubt that a reasonable jury would necessarily also conclude that Cañez failed to establish by a preponderance of the evidence the (G)(1) statutory mitigator.

### b. Non-Statutory Mitigation

**¶21** Cañez offered evidence on several non-statutory mitigating factors at the sentencing hearing. *Id.* at 163-65, ¶¶ 115-25, 42 P.3d at 594-96. The trial judge found, and we affirmed on direct appeal, that Cañez had proved by a preponderance of the evidence the following non-statutory mitigating factors: drug and alcohol use, felony murder, his love of family, and mental illness or impairment. *Id.* at 163-64, ¶¶ 116-17, 120-22, 42 P.3d at 594-95. The trial judge also found, and we affirmed, that Cañez failed to prove the non-statutory mitigating factors of good character, traumatic childhood and dysfunctional family, and disparate sentence of a co-defendant. *Id.* at 164-65, ¶¶ 118-19, 124, 42 P.3d at 595-96. We also concluded that the cumulative effect of all the mitigation was not sufficiently substantial to call for leniency. *Id.* at 165, ¶ 126, 42 P.3d at 596.

**¶22** After reviewing the evidence, we cannot say beyond a reasonable doubt that a reasonable jury would not have found that Cañez proved some of the mitigating factors that the trial judge found were not proven. Furthermore, we cannot say beyond a reasonable doubt that a reasonable jury would not have weighed differently the aggravating or mitigating factors that were found or determined that the mitigating factors were "sufficiently substantial to call for leniency." A.R.S. § 13-703(E). Therefore, we conclude that the *Ring II* error was not harmless in this case.

-11-

Accordingly, for this reason as well, we vacate Cañez's death sentence because of the *Ring II* error and remand for resentencing as discussed more fully below.

**B.    Mental Retardation as an Absolute Bar to Execution**

¶23      Our inquiry is not yet complete.  While Cañez's case remained on direct appeal, the Supreme Court announced that the Eighth Amendment to the United States Constitution "'places a substantive restriction on the State's power to take the life' of a mentally retarded offender."  *Atkins v. Virginia*, 536 U.S. 304, 321, 122 S. Ct. 2242, 2252 (2002) (quoting *Ford v. Wainright*, 477 U.S. 399, 405, 106 S. Ct. 2595, 2599 (1986)).  Furthermore, in 2001, shortly before the decision in *Atkins* was announced, the Arizona legislature enacted a statute barring the imposition of the death sentence on mentally retarded persons.[1]  A.R.S. § 13-703.02 (Supp. 2002).  We now consider the impact of these events on Cañez's case.

¶24      In *Atkins*, the Court gave some guidance regarding how to determine whether a defendant has mental retardation.  The Court noted that "clinical definitions of mental retardation require not only subaverage intellectual functioning, but also significant

---

[1]      We note that as originally written, § 13-703.02 applied only prospectively to cases in which the State filed its notice of intent to seek the death penalty after the effective date of the statute.  However, the statute was amended in 2002 to apply to all capital sentencing proceedings, including resentencing proceedings. *See* A.R.S. § 13-703.02(J); 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 4.

-12-

limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18." *Atkins*, 536 U.S. at 318, 122 S. Ct. at 2250. An IQ below 70-75 indicates subaverage intellectual functioning. *Id.* at 309 nn.3 & 5, 122 S. Ct. at 2245 nn.3 & 5.

¶25 We addressed the application of the standards set forth in *Atkins* to our death penalty cases in *State v. Grell*, ___ Ariz. ___, 66 P.3d 1234 (2003). Like Cañez, Grell was sentenced to death after the trial judge found that he had failed to establish that he had mental retardation. *Id.* at ___, ¶ 27, 66 P.3d at 1238. We noted in *Grell* that because Grell was sentenced before the Supreme Court's decision in *Atkins*, the trial judge had considered the mental retardation evidence from the perspective that such evidence might establish a statutory mitigating factor calling for leniency in sentencing, not from the perspective that such evidence might establish an absolute bar to execution. *Id.* at ___, ¶ 37, 66 P.3d at 1240. We concluded that the *Atkins* decision prohibiting the execution of mentally retarded offenders as well as Arizona's new statute barring the imposition of the death penalty on mentally retarded offenders had "so changed the landscape of death penalty jurisprudence that the trial court simply could not have applied the correct principles during sentencing." *Id.* ¶¶ 37-38. As a consequence, we held that due process required that Grell's case be remanded for an *Atkins* hearing to determine whether Grell has

mental retardation.  *See id.* ¶ 41.

**¶26**     As discussed above, the evidence presented at Cañez's sentencing established that his full-scale IQ was 70, placing him squarely within *Atkins'* definition of subaverage intellectual functioning.[2]  Additional evidence established that Cañez attended special education classes during grade school, demonstrating that any subaverage mental abilities may have manifested before age 18. Most important, however, is the fact that the evidence concerning Cañez's mental abilities was considered only from the viewpoint of establishing mitigation, not as a potential bar to execution.

**¶27**     Due process demands that Cañez receive a hearing at which the court considers the mental retardation evidence under the constitutional principles announced in *Atkins* and the statutory standards set forth in A.R.S. § 13-703.02.  We remand to the trial court to determine whether Cañez has mental retardation and therefore is ineligible to receive the death penalty.  In making this determination, the trial court should follow the principles announced in *Atkins* and the procedures set forth in A.R.S. § 13-703.02, to the extent possible given the post-trial posture of this

---

[2]     The Arizona legislature has adopted a definition of mental retardation very similar to that set forth in the DSM-IV, which requires proof of "(1) significantly subaverage intellectual functioning (IQ of 70 or below), (2) concurrent deficits or impairments in present adaptive functioning in at least two of eleven areas, and (3) onset before the age of 18."  *Grell*, ___ Ariz. at ___, ¶ 30, 66 P.3d at 1239 (describing application of the DSM-IV) (footnote omitted); A.R.S. § 13-703.02(K).

-14-

case.  If the court determines that Cañez has mental retardation, the court shall resentence Cañez to life or natural life in prison. *See id.* § 13-703.02(A).  If the court determines that Cañez does not have mental retardation, the court shall conduct a resentencing hearing before a jury, according to the procedures set forth in A.R.S. § 13-703.01 (Supp. 2002).

## CONCLUSION

¶28    We vacate Cañez's death sentence and remand this case for resentencing and for a determination of whether Cañez has mental retardation and is therefore ineligible for the death penalty.  If the court determines that Cañez suffers from mental retardation, the court shall enter a lawful sentence pursuant to A.R.S. §§ 13-703 to -703.02.  If the court determines that Cañez does not have mental retardation, the court shall conduct a jury resentencing pursuant to A.R.S. §§ 13-703 to -703.01.


                            Rebecca White Berch, Justice

CONCURRING:


Ruth V. McGregor, Vice Chief Justice


Michael D. Ryan, Justice

**J O N E S**, C.J., concurring in part, dissenting in part:

¶29        I concur in Section B of the opinion and the result, but respectfully dissent from the majority's conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury.  The right to trial by an impartial jury is fundamental.  The sentencing phase is, of itself, a life or death matter.  Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the Sixth Amendment to the Constitution of the United States has occurred.  In the aftermath of the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*), the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error.  I would remand the case for resentencing, simply on the basis of the Sixth Amendment violation.  *See State v. Ring*, ___ Ariz. ___, ___ ¶¶ 105-14, 65 P.3d 915, 946-48 (2003) (Feldman, J., concurring in part, dissenting in part) (*Ring III*).

_____
Charles E. Jones, Chief Justice

-16-