SUPREME COURT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-99-0439-AP |
| Appellee, | ) |
| | ) Pima County Superior |
| v. | ) Court No. CR-58016 |
| | ) |
| | ) |
| DANNY N. MONTAÑO, | ) |
| | ) **S U P P L E M E N T A L** |
| Appellant. | ) **O P I N I O N** |
| | ) |
| _____ | ) |

Appeal from the Superior Court of Pima County
The Honorable Deborah J.S. Ward, Judge Pro Tempore

**REMANDED FOR RESENTENCING**

---

Janet Napolitano, Former Attorney General                      Phoenix
Terry Goddard, Attorney General
      by    Kent E. Cattani, Chief Counsel,
            Capital Litigation Section
      and   Robert L. Ellman
      and   James P. Beene
      and   John P. Todd
      and   Bruce M. Ferg                                       Tucson
Assistant Attorneys General
Attorneys for the State of Arizona

Law Office of Carla G. Ryan                                     Tucson
      by    Carla G. Ryan
Attorney for Danny N. Montaño

---

M c G R E G O R, Vice Chief Justice

¶1      The only issue before us is whether reversible error occurred when a trial judge sentenced Danny N. Montaño to death under a procedure that violated the right to a jury trial under the Sixth Amendment to the United States Constitution. *See Ring v.*

*Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 2443 (2002) (*Ring II*). We have jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) section 13-4031 (2001). Based on our review of the record, we cannot conclude that the Sixth Amendment violation constituted harmless error. [1]

**I.**

¶2     In *Ring II*, the United States Supreme Court held that Arizona's former capital sentencing scheme violated the Sixth Amendment. *Ring II*, 536 U.S. at 609, 122 S. Ct. at 2443. The Court declared that "[c]apital defendants, no less than non-capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589, 122 S. Ct. at 2432. The Court reversed our decision in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001)

---

[1]     In *Summerlin v. Stewart*, 341 F.3d 1082 (9th Cir. 2003), the court held that the rule announced in *Ring II* applies retroactively to cases on federal habeas review and concluded that a judge's imposition of a death penalty "cannot be subject to harmless error analysis." *Id.* at *33. We are not bound by the Ninth Circuit's interpretation of what the Constitution requires. See *State v. Vickers*, 159 Ariz. 532, 543 n.2, 768 P.2d 1177, 1188 n.2 (1989)(declining to follow a Ninth Circuit decision which held Arizona's death penalty statute unconstitutional because that decision rested on "grounds on which different courts may reasonably hold different views of what the Constitution requires"); *State v. Clark*, 196 Ariz. 530, 533 ¶ 14, 2 P.3d 89, 92 (App. 1999) (same). Accordingly, we decline to revisit our conclusion that *Ring II* error can be reviewed for harmless error.

2

(*Ring I*), and remanded for further proceedings consistent with its decision. *Ring II*, 536 U.S. at 609, 122 S. Ct. at 2443.

¶3 Following the Supreme Court's *Ring II* decision, we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate to determine whether *Ring II* requires this court to reverse or vacate the defendants' death sentences. In *State v. Ring*, 204 Ariz. 534, ___ ¶ 53, 65 P.3d 915, 936 (2003) (*Ring III*), we held that we will examine a death sentence imposed under Arizona's superseded capital sentencing statutes for harmless error.

## II.

¶4 A jury convicted Montaño of first degree murder and conspiracy to commit first degree murder for the death of Raymond Jackson. Montaño and Jackson were inmates at the Arizona State Prison Cimmaron Unit in Tucson. On August 7, 1995, during an open pod period, Montaño and another inmate, David Jiminez, entered Jackson's cell. While Jiminez held him down, Montaño stabbed Jackson 179 times. Jackson died shortly thereafter.[2]

¶5 After entering judgment, the trial judge conducted a sentencing hearing to determine whether any aggravating or mitigating circumstances existed. *See* A.R.S. § 13-703 (Supp. 1999), *amended by* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, §

---

[2] For a more thorough description of the facts, see *State v. Montaño*, 204 Ariz. 413, 65 P.3d 61 (2003).

3

1.  The judge found four aggravating circumstances. She found, beyond a reasonable doubt, that Montaño had been previously convicted of a prior offense punishable by death or life imprisonment under Arizona law, A.R.S. section 13-703.F.1, that Montaño had been previously convicted of a prior serious offense, A.R.S. section 13-703.F.2, that Montaño committed the murder in an especially cruel manner, A.R.S. section 13-703.F.6, and that the murder was committed while Montaño was in the custody of the Arizona Department of Corrections (ADOC), A.R.S. section 13-703.F.7.

¶6    Montaño argued that two statutory mitigating circumstances exist, and the judge rejected both as not proven by a preponderance of the evidence. Montaño argued that his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13-703.G.1. The judge held that the mitigation evidence failed to prove a causal nexus between Montaño's upbringing and polysubstance abuse and his ability to conform his conduct to the law's requirements on the day of the murder. Montaño also argued that he "was under unusual and substantial duress, although not such as to constitute a defense to prosecution" when he committed the murder. A.R.S. § 13-703.G.2. The judge concluded that the evidence did not support Montaño's argument that he murdered

4

Jackson because of his involvement with a prison gang. Nothing in the record established that the gang ordered Montaño to kill Jackson.

¶7        Montaño sought to prove thirteen non-statutory mitigating circumstances. The trial judge found four proven by a preponderance of the evidence: biographical misfortune-condition of birth, learning disability in mathematics, polysubstance abuse, and low to borderline I.Q.[3] The judge rejected the following: Attention Deficit Hyperactivity Disorder, lack of effective intervention and treatment, the corrupt and coercive prison reality, the victim, circumstantial evidence, preliminary hearing testimony, prison homicide, potential outcome disparity, and the opinions and feelings of others.

¶8        After reviewing the evidence, the judge determined that the four established mitigators were not entitled to any mitigating weight. She found that although Montaño was an alcoholic and drug user as a teenager, his parents worked hard to provide a loving family environment. The judge recognized that his "family worked very hard to provide [him] with a safe and nurturing environment," and that his "family did everything they could do to try to [deter]

---

[3]        In the Special Verdict, the trial judge held that the defense had proven the polysubstance abuse mitigating circumstance. In a statement summarizing her mitigation findings, however, the judge did not include polysubstance abuse as an established mitigating circumstance. We assume that the omission is accidental, and that the polysubstance abuse mitigating circumstance was proven by a preponderance of the evidence.

the defendant's participation in the criminal justice system." Concluding that there was no causal relation between Montaño's family life and the murder, the judge assigned no weight to the biographical misfortune-condition of birth mitigating circumstance. Likewise, she concluded that Montaño's learning disability was not causally related to the murder. The judge further held that Montaño was not impaired by alcohol or drugs at the time of the murder and that his low I.Q. did not impact his ability to conform his conduct to law at the time of the murder.

¶9 The judge concluded that none of the mitigating circumstances were sufficiently substantial to call for leniency and sentenced Montaño to death.

¶10 We affirmed Montaño's convictions on direct appeal and ordered supplemental briefing on the issue of whether the Sixth Amendment *Ring II* error was harmless. *Montaño*, 204 Ariz. at ___ ¶ 85, 65 P.3d at 77. We will find constitutional error harmless if we conclude, beyond a reasonable doubt, that the error did not contribute to or affect the sentencing outcome. *Ring III*, 204 Ariz. at ___, ¶¶ 103-04, 65 P.3d at 946. If we conclude that reasonable doubt exists, however, then the error is prejudicial and the case must be remanded for a new sentencing hearing under Arizona's amended capital sentencing statutes. *Id.* at ___, ¶ 102, 65 P.3d at 946.

¶11      Arizona law recognizes two separate prior conviction aggravating circumstances.  These aggravators exist when either "[t]he defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable," A.R.S. section 13-703.F.1, or "[t]he defendant was previously convicted of a serious offense, whether preparatory or completed," A.R.S. § 13-703.F.2.  The trial judge found that Montaño had been previously convicted of two counts of armed robbery in which he received two concurrent life sentences.  She also recognized Montaño's conspiracy to commit first degree murder conviction as a prior offense.

¶12      In *Ring III*, we held "that the Sixth Amendment does not require a jury to determine prior convictions under sections 13-703.F.1 and F.2."  204 Ariz. at ___ ¶ 55, 65 P.3d at 937.  Accordingly, we will not disturb the trial judge's finding that the prior serious conviction aggravating circumstance exists.

**B.**

¶13      Arizona law provides for an aggravating circumstance if a person commits first degree murder while "in the custody of . . . the state department of corrections."  A.R.S. § 13-703.F.7.  James Grider, an ADOC investigator, testified that

Montaño was an inmate on the day of the murder. The defense did not challenge Grider's testimony.

**¶14** Indeed, Montaño conceded the in-custody aggravating circumstance as part of his penalty phase mitigation arguments. In *Ring III*, we held that "[i]n cases in which a defendant stipulates, confesses or admits to facts sufficient to establish aggravating circumstance, we will regard that factor as established." 204 Ariz. at ___ ¶ 93, 65 P.3d at 944. Montaño attempted to prove several mitigating circumstances by relying upon his status as a prisoner. We therefore conclude that the in-custody aggravating circumstance is established beyond a reasonable doubt.

### C.

**¶15** The State establishes the especially cruel aggravating circumstance if it proves, beyond a reasonable doubt, that "the victim consciously experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur." *State v. Trostle,* 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997) (citations omitted).

**¶16** Jackson was stabbed 179 times. The medical examiner testified that Jackson could have been alive anywhere between one and three minutes or five and ten minutes after the first fatal stab wound, depending upon which wound was inflicted first. According to the medical examiner, Jackson would have suffered

8

shock and then lost consciousness after losing two to three pints of blood.

¶17    Testimony elicited during cross-examination raised the possibility that Jackson fell unconscious after receiving blows from either Montaño or Jiminez before the stabbing began.  If that were true, Jackson would have been unconscious before blood loss began.

¶18    The State introduced evidence indicating that screams of pain and torture emanated from Jackson's cell after Montaño and Jiminez entered.  While the testimony suggests that Jackson was conscious during the stabbing, his screams also could indicate his reaction to the fighting taking place beforehand.  Given the evidence, we cannot conclude, beyond a reasonable doubt, that all reasonable juries would find Jackson's death especially cruel.

¶19    We conclude that the especially cruel finding is not harmless beyond a reasonable doubt.  Whether Jackson lost consciousness before the stabbings began or thereafter presents a question of fact.  *Cf. State v. Jones*, ___ Ariz. ___, ___ ¶ 14, ___ P.3d ___, ___ (2003) (holding that a jury could conclude that the victim lost consciousness immediately following the first assault).  Montaño is entitled to a jury determination of this issue.

**IV.**

¶20    To sentence a defendant to death, the trier of fact must not only find, beyond a reasonable doubt, the existence of one or

more aggravating circumstances, but also consider whether any mitigating circumstances are sufficiently substantial to call for leniency. *See* A.R.S. § 13-703.E. We may "affirm a capital sentence only if we conclude, beyond a reasonable doubt, that no rational trier of fact would determine that the mitigating circumstances were sufficiently substantial to call for leniency." *Ring III*, 204 Ariz. at ___ ¶ 104, 65 P.3d at 946.

**¶21** Montaño's penalty phase mitigation theory alleged that several factors contributed to his inability to conform his conduct to law on the day of the murder. The defense introduced three expert witnesses claiming that Montaño's parents, the educational system, and the state failed to recognize certain problems he encountered while a teenager, such as his alcohol and drug abuse. Additionally, according to the expert testimony, Montaño's parents were preoccupied with an incident in which his sister was molested by a neighbor, which diverted their attention from his problems. Montaño also alleged that his substance abuse problems contributed to his propensity to commit crimes and that his low I.Q. rendered him unable to understand the legality of his conduct.

**¶22** Hector Jose Fernandez Barillas, a clinical psychologist and expert witness for the defense, examined these factors and concluded that they impaired Montaño's ability to appreciate the wrongfulness of his conduct on the day of the murder:

> Q. In your report you concluded that reviewing all of this information and testing the defendant, going

10

> over his academic history and his problems that he had when he was younger, that all of this affected his ability to conform his conduct to the law?

> A.   Yes.

> Q.   Can you -- is this your opinion?

> A.   Yes, it is.

> Q.   And this would relate to Mr. Montaño's inability to conform his conduct to the law at the time of the murder he has been convicted of?

> A.   Yes.

¶23    If a jury had believed this expert testimony, it could have adopted one or more of Montaño's proffered mitigating circumstances.  Furthermore, we cannot say beyond a reasonable doubt that no reasonable jury would have weighed differently the established aggravating and mitigating circumstances or determined that the mitigating circumstances were "sufficiently substantial to call for leniency."  A.R.S. § 13-703.E.  We therefore conclude that the Sixth Amendment error was not harmless.

**V.**

¶24    Montaño argues that mitigation evidence presented at the original aggravation/mitigation hearing entitles him to testing for mental retardation under A.R.S. section 13-703.02 (Supp. 2002).  We cannot conclude, on the record before us, whether Montano suffers from mental retardation.  We need not resolve this issue, however, because section 13-703.02 will apply at Montaño's resentencing proceeding.

11

**¶25** In 2001, the Arizona Legislature enacted A.R.S. section 13-703.02, prohibiting the state from executing persons with mental retardation. A first degree murder defendant afflicted with mental retardation must be sentenced to life or natural life in prison. A.R.S. § 13-703.02.A. Although the law as enacted applied prospectively, the legislature, in 2002, amended the statute to "apply to any sentencing or resentencing proceeding on any first degree murder case that is held after the effective date of this act." 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1 § 7.A; *State v. Cañez*, ___ Ariz. ___, ___ n.1, 74 P.3d 932, 937 n.1 (2003).

## VI.

**¶26** For the foregoing reasons, we vacate Montaño's death sentence and remand for resentencing under A.R.S. sections 13-703 and 13-703.01 (Supp. 2002).

_____
Ruth V. McGregor, Vice Chief Justice

CONCURRING:

_____
Rebecca White Berch, Justice

_____
Michael D. Ryan, Justice

12

**J O N E S**, C.J., concurring in part, dissenting in part:

¶27     I concur in the result, but dissent from the majority's conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury. The right to trial by an impartial jury is fundamental. The sentencing phase is, of itself, a life or death matter. Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the Sixth Amendment to the Constitution of the United States has occurred. In the aftermath of the Supreme Court's decision in *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*), the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error. I would remand the case for resentencing, simply on the basis of the Sixth Amendment violation. *See State v. Ring,* ____ Ariz. ____, ____ ¶¶ 105-14, 65 P.3d 915, 946-48 (2003) (Feldman J., concurring in part, dissenting in part) (*Ring III*).

_____
Charles E. Jones, Chief Justice

13