SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No.  CR-02-0042-AP |
| Appellee, | ) | |
| | ) | Maricopa County |
| v. | ) | Superior Court |
| | ) | No.  CR 1999-003536 |
| BRIAN JEFFREY DANN, | ) | |
| | ) | |
| Appellant. | ) | **SUPPLEMENTAL OPINION** |
| | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable H. Jeffrey Coker, Judge

**DEATH SENTENCE VACATED; REMANDED FOR RESENTENCING**

_____

JANET A. NAPOLITANO, FORMER ARIZONA ATTORNEY GENERAL      Phoenix
TERRY GODDARD, ARIZONA ATTORNEY GENERAL
        by    Kent E. Cattani, Chief Counsel,
              Capital Litigation Section
        and   Jim D. Nielsen, Assistant Attorney General
        and   Robert L. Ellman, Assistant Attorney General
        and   James P. Beene, Assistant Attorney General
        and   John P. Todd, Assistant Attorney General
        and   Bruce M. Ferg, Assistant Attorney General      Tucson
Attorneys for State of Arizona, Appellee

SUSAN M. SHERWIN, MARICOPA COUNTY OFFICE
OF THE LEGAL ADVOCATE                                      Phoenix
        by    Brent E. Graham
        and   Consuelo M. Ohanesian
and
SHUGHART, THOMSON, KILROY, GOODWIN & RAUP, P.C.           Phoenix
        by    Rudolph J. Gerber
Attorneys for Brian Jeffrey Dann, Appellant

_____

**B E R C H,** Justice

¶1      Brian Jeffrey Dann was sentenced to death under a procedure found unconstitutional in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002) ("*Ring II*").  In *Ring II*, the United States Supreme Court held that Arizona's capital sentencing scheme violated the defendant's Sixth Amendment right to a jury trial.  *Id*. at 609, 122 S. Ct. at 2443.[1]  In doing so, the Court held that defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."  *Id*. at 589, 122 S. Ct. at 2432.  The Court remanded the case for further proceedings consistent with its decision.  *Id*. at 609, 122 S. Ct. at 2443.

¶2      On remand we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate, including Dann's case, to determine whether *Ring II* required reversal or vacatur of the death sentences.  *State v. Ring*, 204 Ariz. 534, 544, ¶¶ 5-6, 65 P.3d 915, 925 (2003) ("*Ring III*").  We concluded that we must review each death sentence imposed in these cases under Arizona's superseded capital sentencing statute for harmless error.[2]  *Id.* at 555, ¶ 53, 65 P.3d at 936.

---

[1]      The legislature has amended the capital statute so that sentencing factors in capital cases are now tried before juries.  *See* 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 1.

[2]      As we stated recently in *State v. Sansing*, CR-99-0438-AP 4 n.2 (Ariz. Sept. 25, 2003),

¶3 We now consider whether the death sentence imposed on Dann can stand in light of *Ring II* and *Ring III*, as well as the Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242 (2002), which held that the Eighth Amendment of the United States Constitution prohibits the execution of mentally retarded persons. *Id.* at 321, 122 S. Ct. at 2252.

**FACTS AND PROCEDURAL HISTORY**

¶4 On October 1, 2001, a jury found Brian Jeffrey Dann guilty of three counts of first degree murder and one count of first degree burglary. Following the jury's verdict, the trial judge conducted a sentencing hearing in which he found one aggravating circumstance beyond a reasonable doubt: that Dann

---

In *Summerlin v. Stewart*, 341 F.3d 1082, 1119 (9th Cir. 2003), the court held that the rule announced in *Ring II* applies retroactively to cases on federal habeas review and concluded that a judge's imposition of a death penalty "cannot be subject to harmless error analysis." *Id.* at *33. We are not bound by the Ninth Circuit's interpretation of what the Constitution requires. *See State v. Vickers*, 159 Ariz. 532, 543 n.2, 768 P.2d 1177, 1188 n.2 (1989) (declining to follow a Ninth Circuit decision which held Arizona's death penalty statute unconstitutional because that decision rested on "grounds on which different courts may reasonably hold different views of what the Constitution requires"); *State v. Clark*, 196 Ariz. 530, 533, ¶ 14, 2 P.3d 89, 92 (App. 1999) (same). Accordingly, we decline to revisit our conclusion that *Ring II* error can be reviewed for harmless error.

- 3 -

had been convicted of one or more homicides that were committed during the commission of the offense. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-703(F)(8) (2001). This finding rendered Dann eligible for the death sentence. *See id.* § 13-703(E). After reviewing the mitigating circumstances Dann presented at the sentencing hearing, the judge concluded that they were not "sufficiently substantial to call for leniency," and sentenced Dann to death. On appeal we reversed Dann's convictions for two of the first degree premeditated murders, but affirmed one conviction of premeditated first degree murder, three convictions of first degree felony murder, and the conviction and sentence for first degree burglary. *State v. Dann*, ___ Ariz. ___, ___, ¶ 76, 74 P.3d 231, 250 (2003). We now review whether, in light of *Ring II* and *Ring III*, the death sentence imposed on Dann can stand.

## DISCUSSION

### A. *Ring II* Error

¶5      In *Ring III*, we concluded that judicial fact-finding in the capital sentencing process may constitute harmless error if we can conclude beyond a reasonable doubt that no reasonable jury would fail to find the aggravating circumstance. 204 Ariz. at 555, 565, ¶¶ 53, 102-04, 65 P.3d at 936, 946. We now examine whether the *Ring II* error was harmless with respect to the

aggravating circumstance found by the trial judge in Dann's case.

### 1.   Aggravating Circumstance:  Multiple Homicides.

**¶6**       Arizona law lists as an aggravating circumstance whether "[t]he defendant has been convicted of one or more other homicides . . . which were committed during the commission of the offense."  A.R.S. § 13-703(F)(8).  *Ring III* makes clear that while the finding of an (F)(8) aggravator is subject to a harmless error analysis, the finding may not be based solely on the jury's verdict of guilt on multiple homicides.  204 Ariz. at 561, ¶¶ 81-82, 65 P.3d at 942.  Rather, the murders must be "temporally, spatially and motivationally related."  *Id*. ¶ 81 (citing *State v. Rogovich*, 188 Ariz. 38, 45, 932 P.2d 794, 801 (1997)).

**¶7**       In this case, as specifically prohibited by *Ring III* and *Rogovich*, the trial judge based his finding on the fact that the jury "found beyond a reasonable doubt that the defendant killed three people."  We agree with Dann that this was error. *See Ring III*, 204 Ariz. at 561, ¶¶ 81-82, 65 P.3d at 942 (noting that "[w]ithout a finding that the murders are temporally, spatially and motivationally related, the bare jury verdict does not implicitly support the F.8 aggravator") (citing *Rogovich*, 188 Ariz. at 45, 932 P.2d at 801).  As we noted in *Ring III*, however, we can find the error to be harmless if "no reasonable

- 5 -

jury could find that the state failed to prove the F.8 factor beyond a reasonable doubt." *Id*. ¶ 82. We find that to be the case here and therefore conclude that the error was harmless.

¶8        This court recently analyzed the temporal, spatial, and motivational relationships necessary to support a finding of the (F)(8) factor. *See State v. Tucker*, ___ Ariz. ___, ¶¶ 65-66, 68 P.3d 110, 122 (2003); *see also State v. Lavers*, 168 Ariz. 376, 393-94, 814 P.2d 333, 350-51 (1991). In *Tucker,* the court affirmed the trial court's finding of a spatial relationship because all victims were murdered within an apartment, in close proximity to one another: two in a bedroom and the primary victim in the adjoining area. *Tucker*, ___ Ariz. at ___-___, ___, ¶¶ 12-13, 65-66, 68 P.3d at 113-14, 122. It is uncontested here that Dann's victims were also killed in close proximity to one another. All died in the front room of Andrew's apartment, where they had been seated near one another. *Dann*, ___ Ariz. at ___, ¶ 7, 74 P.3d at 237.

¶9        Similarly, the undisputed evidence at trial showed that all victims were killed within moments of one another. *See id.* Witness Tina Pace-Morrell, Dann's former girlfriend, testified that, immediately after the killings, Dann came to her apartment and told her that he shot Andrew Parks, his intended victim, then Shelly Parks, and then shot Eddie Payan because he had witnessed the other killings. *Id*. The short, uninterrupted

span of time in which these actions occurred satisfied the temporal relationship required to sustain the (F)(8) factor. *See Lavers*, 168 Ariz. at 394, 814 P.2d at 351 (finding a temporal relationship existed where "the two murders were separated by just minutes").

¶10      Finally, the motivational requirement was shown by the uncontroverted evidence that Dann went to the apartment intending to kill Andrew, *see Dann*, ___ Ariz. at ___, ___, ¶¶ 6, 19, 74 P.3d at 237, 239, and killed Shelley and Eddie simply because they were there, and, with respect to Eddie, simply because he was a witness, *id*. ¶ 7.  In *Tucker*, a case very similar to this one, we found related motivation where, although the defendant's ex-girlfriend was the primary victim, other victims may have been killed to eliminate witnesses.  ___ Ariz. at ___, ¶ 66, 68 P.3d at 122.  We concluded that it was "difficult to imagine a motive for the killings unrelated to the murder of [the girlfriend]").  *Id*.  We conclude here, as we did in *Tucker*, that while a jury may differ as to Dann's precise motive for killing Shelly and Eddie, no jury would fail to find that his motives were related to the murder of Andrew.

¶11      We conclude that, given the uncontroverted evidence on these points, no jury could have found other than that the three murders in this case were temporally, spatially, and

motivationally related. We therefore find any error in this finding harmless beyond a reasonable doubt.

### 2. Mitigating Circumstances.

¶12 Our harmless error inquiry does not end with an examination of the aggravating circumstances. Because we can affirm a capital sentence only if we can conclude beyond a reasonable doubt "that no rational trier of fact would determine that the mitigating circumstances were sufficiently substantial to call for leniency," we must also consider whether reversible error occurred with respect to the mitigating circumstances. *Ring III*, 204 Ariz. at 565, ¶ 104, 65 P.3d at 946.

¶13 At his sentencing hearing, Dann offered eleven mitigating circumstances for the court's consideration. Three of these factors were statutory: impairment, unusual or substantial duress, and age. A.R.S. § 13-703(G)(1), (G)(2), (G)(5). Dann also offered eight non-statutory factors: (1) abandonment, (2) polysubstance abuse and dependency, (3) dysfunctional family, (4) lack of stability, (5) brain damage, (6) psychiatric issues, (7) residual doubt, and (8) family support. The trial judge found that Dann proved three of these latter mitigating circumstances: substance abuse, psychiatric issues, and family support. He gave little weight to family support and substance abuse, however, and determined that Dann failed to establish a significant causal connection between the

- 8 -

psychiatric issues and the three murders of which he was convicted. As a result, the trial judge concluded that the weight of these mitigating factors was insufficient to call for leniency.

¶14    Based on the conflicting evidence in this record on these issues, we cannot conclude beyond a reasonable doubt that no rational jury would find other than as the trial judge found. After reviewing the evidence, we cannot say that a jury would not have found additional mitigating factors or weighed differently the mitigating factors that were found. Furthermore, we cannot say beyond a reasonable doubt that if a jury had found additional mitigating circumstances or weighed the mitigating circumstances differently, it would not have found them "sufficiently substantial to call for leniency." A.R.S. § 13-703(E).    Therefore, we conclude that the *Ring II* error was not harmless in this case. Accordingly, we vacate Dann's death sentence and remand for resentencing.

**B.    Mental Retardation as an Absolute Bar to Execution**

¶15    Our inquiry is not yet complete. While Dann's case remained on direct appeal, the Supreme Court announced that the Eighth Amendment to the United States Constitution "'places a substantive restriction on the State's power to take the life' of a mentally retarded offender." *Atkins*, 536 U.S. at 321, 122 S. Ct. at 2252 (quoting *Ford v. Wainwright*, 477 U.S. 399, 405,

106 S. Ct. 2595, 2599 (1986)).  Furthermore, in 2001, shortly before the decision in *Atkins* was announced, the Arizona legislature enacted a statute barring the imposition of the death sentence on mentally retarded persons.[3]

¶16    Dann asserts that he should be afforded a hearing to determine whether he is mentally retarded and, if so, whether his retardation is so severe as to bar his execution.  In *Atkins*, the Court offered some guidance regarding how to determine whether a defendant has mental retardation.  The Court noted that "clinical definitions of mental retardation require not only subaverage intellectual functioning, but also significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18."  *Id.* at 318, 122 S. Ct. at 2250.

¶17    We addressed the application of the standards set forth in *Atkins* to our death penalty cases in *State v. Grell*, 205 Ariz. 57, 66 P.3d 1234 (2003).  In *Grell*, the trial judge sentenced a capital defendant to death after finding that the defendant had failed to establish that he was mentally retarded.  *Id*. at 61, ¶ 27, 66 P.3d at 1238.  Because Grell was sentenced

---

[3]    We note that as originally written, A.R.S. § 13-703.02 applied only prospectively to cases in which the State filed its notice of intent to seek the death penalty after the effective date of the statute.  The statute was amended in 2002, however, to apply to all capital sentencing proceedings, including resentencing proceedings.  *See id.* § 13-703.02(J) (Supp. 2003); 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 4.

before the Supreme Court issued its decision in *Atkins*, the trial judge had considered the mental retardation evidence from the perspective that such evidence might establish a statutory mitigating factor calling for leniency in sentencing, not from the perspective that such evidence might raise an absolute bar to execution. *Id*. at 63, ¶ 37, 66 P.3d at 1240. We concluded that the *Atkins* decision prohibiting the execution of mentally retarded offenders as well as Arizona's new statute barring the imposition of the death penalty on mentally retarded offenders had "so changed the landscape of death penalty jurisprudence that the trial court simply could not have applied the correct principles during sentencing." *Id*. ¶¶ 37-38. As a consequence — and because Grell had made a showing of subaverage intellectual functioning, deficits in adaptive functioning, and onset before age 18 — we held that due process required that Grell's case be remanded for an *Atkins* hearing to determine whether Grell had mental retardation. *See id*. ¶ 41. Our rationale in doing so was that the trial judge's decision not to accept mental retardation as mitigation might differ when viewing the same evidence as a bar to execution: "[T]he adversarial procedure by which Grell's mental retardation was considered differed in nature and scope from the process created by the legislature in A.R.S. § 13-703.02, which contemplates a more thorough

- 11 -

examination by experts selected by the trial judge, in consultation with the parties." *Id.* ¶ 40.

**¶18** Dann's case differs from Grell's, however, because while Grell had presented extensive evidence of his retardation at the mitigation hearing, including IQ tests placing his intelligence in the "seventy to seventy-five" range specified by the Supreme Court in *Atkins* as triggering the mental retardation inquiry, Grell also presented expert evidence that he lacked adaptive capacity and that his condition manifested itself before age 18. *Id.* at 62, ¶¶ 31-35, 66 P.3d at 1239; *see* A.R.S. § 13-703.02(K)(2). Dann, on the other hand, presented two IQ tests, one administered while he was in first grade, which produced a measured IQ of 123, and a standard WAIS-III given to Dann in preparation for his sentencing hearing, which revealed a full scale IQ of 100.[4] Neither test reveals intelligence at the low level necessary to trigger the *Atkins/Grell* inquiry. Nor has Dann shown evidence of impairment in adaptive capability or onset before age 18.

**¶19** The only evidence that Dann has offered in this respect is (1) the 23-point drop in his IQ over three decades, (2) that he has some degree of brain damage, and (3) that he

_____

[4] In *Atkins*, the Supreme Court noted that "a person receiving [an IQ] score [on the WAIS-III] of 100 is considered to have an average level of cognitive functioning." 536 U.S. at 309 n.5, 122 S. Ct. at 2245 n.5.

- 12 -

suffers from "an antisocial disorder that shares some aspects of borderline personality disorder." Dann alleges that "A.R.S. § 13-703.02 created a pretrial process by which capital defendants are evaluated for *mental defects*" (emphasis added). We disagree with Dann's characterization of the law. *Atkins*, *Grell*, and *Cañez*[5] recognized the right to a hearing to determine mental retardation, not mental defects. Mental retardation is not curable or controllable by medication, as certain forms of mental illness may be.

¶20    This court recently addressed whether mental retardation hearings, pursuant to A.R.S. § 13-703.02, are required on resentencing. *See State v. Montaño*, CR-99-0439-AP, slip op. at ¶¶ 24-25 (Ariz. Oct. 21, 2003). In *Montaño*, the capital defendant alleged "that his low I.Q. rendered him unable to understand the legality of his conduct," and presented expert testimony that this allegation, considered along with the defendant's "academic history and his problems that he had when he was younger . . . affected his ability to conform his conduct to the law." *Id.* ¶¶ 21-22. Because we could not conclude as a matter of law from this evidence whether Montaño was mentally retarded, we remanded the case to the trial court to determine

---

[5]    *State v. Cañez*, 403 Ariz. Adv. Rep. 25 (June 30, 2003).

whether a mental retardation hearing was required under § 13-703.02. *Id.* ¶ 24.

**¶21** Unlike Montaño, however, Dann has offered no evidence that raises any doubt as to whether he may be mentally retarded. Although he presented IQ evidence, he has never alleged mental retardation and did not offer any evidence demonstrating even the possibility of mental retardation. He has offered no evidence of impairment of adaptive capability or onset before age 18. In fact the IQ evidence Dann offered showed that at the time of sentencing his full scale IQ was 100, substantially above the "seventy to seventy-five" range that triggers the mental retardation inquiry. Under *Atkins* and § 13-703.02, therefore, Dann's mental ability far exceeded the threshold necessary to trigger a mental retardation inquiry. Because we conclude as a matter of law that Dann has not met the minimum threshold necessary to trigger an *Atkins* or § 13-703.02 inquiry, we deny his request for a hearing on the subject of mental retardation.

### C. Claims Raised to Avoid Preclusion

**¶22** Dann has raised fourteen separate bases for his claim that Arizona's death penalty is unconstitutional. After reviewing them, we reject each claim and affirm the constitutionality of the death penalty in Arizona under the

constitutions of both the United States and the State of Arizona.

## CONCLUSION

**¶23**      We vacate Dann's death sentence and remand this case for jury resentencing pursuant to A.R.S. §§ 13-703 to -703.01, but deny Dann's request for a hearing pursuant to *Atkins* or A.R.S. § 13-703.02.


_____
Rebecca White Berch, Justice


CONCURRING:


_____
Ruth V. McGregor, Vice Chief Justice


_____
Michael D. Ryan, Justice


**J O N E S**, C.J., concurring in part, dissenting in part:

**¶24**      I concur in the result, but dissent from the majority=s conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury.  The right to trial by an impartial jury is fundamental.  The sentencing phase is, of itself, a life or death matter.  Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the

- 15 -

Sixth Amendment to the Constitution of the United States has occurred. In the aftermath of the Supreme Court≤s decision in *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*), the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error. I would remand the case for resentencing, simply on the basis of the Sixth Amendment violation. *See State v. Ring,* 204 Ariz. 534, 565-67 && 105-14, 65 P.3d 915, 946-48 (2003) (Feldman J., concurring in part, dissenting in part) (*Ring III*).

_____<br>
Charles E. Jones, Chief Justice