SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, ) | Arizona Supreme Court |
| ) | No. CR-07-0153-AP |
| Appellee, ) | |
| ) | Maricopa County |
| v. ) | Superior Court |
| ) | No. CR1999-003536 |
| BRIAN JEFFREY DANN, ) | |
| ) | |
| Appellant. ) | |
| ) | **O P I N I O N** |
| _____ ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Boyd T. Johnson, Visiting Judge from Pinal County

**AFFIRMED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     By    Kent E. Cattani, Chief Counsel, Criminal
           Appeals/Capital Litigation Section
           Jon G. Anderson, Assistant Attorney General
Attorneys for State of Arizona

DAVID GOLDBERG, ATTORNEY AT LAW                    Fort Collins, CO
     By    David Goldberg
Attorney for Brian Jeffrey Dann
_____

**M c G R E G O R**, Chief Justice

¶1        In 2001, a jury convicted Brian Jeffrey Dann of three counts of first degree murder and one count of first degree burglary.  The trial judge imposed death sentences for each murder after finding one aggravating circumstance beyond a reasonable doubt.  *See* Ariz. Rev. Stat. (A.R.S.) § 13-751.F.8

1

(Supp. 2008).[1]  The judge concluded that the mitigating circumstances were not "sufficiently substantial to call for leniency" and sentenced Dann to death.  *See* § 13-751.E.

¶2      On appeal, we reversed Dann's convictions for two of the premeditated murders, but affirmed one conviction of premeditated first degree murder, three convictions of first degree felony murder, and the conviction and sentence for first degree burglary.  *State v. Dann* (*Dann I*), 205 Ariz. 557, 576 ¶ 76, 74 P.3d 231, 250 (2003).

¶3      Dann was sentenced under a procedure later found unconstitutional in *Ring v. Arizona* (*Ring II*), 536 U.S. 584 (2002).  In reviewing Dann's death sentences, we considered whether it was harmless error for the trial judge, rather than a jury, to have found the aggravating factor and to have determined that death sentences were appropriate.  *State v. Dann* (*Dann II*), 206 Ariz. 371, 373-74 ¶¶ 5-11, 79 P.3d 58, 60-61 (2003).  We found harmless the trial judge's finding of the F.8 multiple murders aggravator.  *Id.* at 374 ¶ 11, 79 P.3d at 61.

---

[1]    At the time the murders were committed, capital sentencing provisions were found in A.R.S. § 13-703 (1993).  Before Dann's resentencing, the legislature amended § 13-703.01, which also applied to Dann's resentencing.  2002 Ariz. Sess. Laws, ch. 1, § 3 (5th Spec. Sess.).  The statutes were reorganized and renumbered to §§ 13-751 to -759.  2008 Ariz. Sess. Laws, ch. 301 §§ 26, 36, 39-41 (2d Reg. Sess.).  Because the former and current statutes do not differ in any respect material to this decision, we cite to the current version of the statute, unless otherwise noted.

We concluded, however, that resentencing was required because a reasonable jury could have reached a different conclusion regarding the significance of the mitigating circumstances. *Id.* at 374 ¶ 14, 79 P.3d at 61.

¶4    In 2007, a new jury found the F.8 aggravator and determined that the mitigation was not sufficiently substantial to warrant leniency and that the death penalty was appropriate.

¶5    Pursuant to Arizona Rule of Criminal Procedure 31.2.b, Dann's appeal to this Court is automatic. We exercise jurisdiction pursuant to Article 6, Section 5.3, of the Arizona Constitution and A.R.S. § 13-4031 (2001). For the reasons discussed below, we affirm Dann's death sentences.

## I.[2]

¶6    On the evening of Saturday, April 3, 1999, Dann stopped at the home of his former girlfriend, Tina Pace-Morrell, to borrow a gun. He told Tina that Andrew Parks had fired a gun at him earlier in the day and he needed a gun for protection because he wanted to go to Andrew's apartment to pick up some of his belongings. Andrew Parks is the brother of Shelly Parks, then Dann's girlfriend. Tina loaned Dann a .38 caliber revolver.

¶7    That same night, Dann went to a bar he frequented in

---

[2]    A more detailed account of the facts appears in *Dann I*, 205 Ariz. at 562-64 ¶¶ 2-10, 74 P.3d at 236-38.

3

Phoenix. Dann told his friend George Thomas, who was also at the bar that evening, that he and Shelly were having problems. He related that Shelly's brother, Andrew, had shot at him earlier that day. Dann showed George the revolver he had borrowed from Tina, stating that he intended to "straighten out the problem." When George asked Dann what he intended to do with the gun, Dann said he intended to use it to kill Andrew. Dann also asked George for an unlicensed, untraceable "throw-away" gun. George refused Dann's request and spent the next two hours attempting to talk Dann out of his plan. By the end of the conversation, Dann seemed calmer and told George he was going home to go to bed. The bar's owner saw the men talking in the parking lot at 2:00 a.m. as she left the bar.

¶8 Tina testified that Dann called between 2:00 a.m. and 3:00 a.m. on Sunday, April 4, and told her that he had just shot three people. He asked what he should do. Tina advised Dann to turn himself in, but he refused. About thirty minutes later, he arrived at Tina's home and gave her the gun and five spent rounds. While there, he described how he had forced his way into Andrew's apartment, "leveled the gun," and shot Andrew, then Shelly, and then Eddie Payan, a friend who was visiting at the time. Dann recounted that he shot Andrew and Shelly because they laughed at him, and he shot Eddie because he witnessed the shootings of Andrew and Shelly. Dann asked Tina to tell the

4

police he was with her throughout the night, thus providing him an alibi. Before leaving, he washed his hands and borrowed some clothes.

¶9       At about six a.m. on Sunday morning, Dann returned to Andrew's apartment and called 911. He reported that he had just discovered three bodies in the apartment. During the next few days, police interviewed Tina and George and located the revolver Dann had borrowed from Tina. Ballistics analysis of the gun and the bullets recovered at the scene indicated that the bullets that killed Andrew, Shelly, and Eddie were fired from the revolver. The medical examiner testified that Andrew was shot twice, once in the chest and once in the right temple; that Shelly was shot once, in the top of her head above the right ear; and that Eddie was shot twice, once behind the left ear and once in his right forehead. On April 7, 1999, Dann was arrested for the triple homicide.

## II.

### A.

¶10       Dann waived counsel and chose to represent himself at his resentencing. Dann's first argument on appeal is that he did not knowingly, intelligently, and voluntarily waive his right to counsel. "Whether an accused has made an intelligent and knowing waiver of counsel is a question of fact." *State v. Doss*, 116 Ariz. 156, 160, 568 P.2d 1054, 1058 (1977). A waiver

5

finding is based substantially on the trial judge's observation of the defendant's appearance and actions. *See id.*

¶11     Shortly after we issued the mandate in this case, the trial judge held a status conference at which Dann moved for a change of judge and stated that he did not recognize James Logan, his 2001 trial counsel, as his attorney.  The court granted Dann's motion for a change of judge and advised him that the new judge would decide whether to appoint new counsel.

¶12     On January 14, 2004, the new trial judge appointed Robert Storrs to represent Dann, but Storrs moved to withdraw on February 24, 2004.  Dann argued that any attorney from the Office of Court Appointed Counsel from Maricopa County would have a conflict of interest because Dann's father had served as a Maricopa County Superior Court judge for twenty years.  The court allowed Storrs to withdraw.

¶13     On February 25, 2004, the court appointed contract attorneys Michael Villareal and James Soslowsky.  Villareal declined the appointment, but Soslowsky continued as co-counsel, and the court appointed John Schaus as lead counsel on March 9, 2004.

¶14     At the time of their appointment, Schaus and Soslowsky were preparing for another capital case and could not immediately work on Dann's case.  Dann filed several motions alleging that counsel had a "conflict of interest" because they

6

were not consulting him or actively representing him, and Dann requested a *Faretta* hearing. *See Faretta v. California*, 422 U.S. 806, 807 (1975). At the hearing, Dann informed the court he had reviewed the waiver of counsel form with Schaus and Soslowsky. Soslowsky explained the background of his appointment and recounted that he had informed Dann that he and Schaus were working on another capital case when appointed to this case. Both lawyers reiterated that they had no ethical basis for moving to withdraw. Dann stated that he wished to waive his right to counsel and defend himself.

¶15 The court then followed the waiver of counsel procedure set forth in Arizona Rule of Criminal Procedure 6.1.c. Dann avowed that he (1) had read the waiver form, (2) had no question about it, (3) understood the charges and potential penalties, and (4) understood the responsibilities and duties of defending himself. He also stated that he understood that his was a complex case and that he could change his mind and accept counsel at any time, but could not repeat completed proceedings. The court found that Dann had not shown counsel to have an actual conflict and, over Dann's protest, appointed Schaus and Soslowsky as advisory counsel. The court found a knowing, intelligent, and voluntary waiver of counsel.

¶16 The federal and state constitutions guarantee the right to waive counsel and to represent oneself. U.S. Const.

7

amend. VI; *id*. amend. XIV; Ariz. Const. art. 2, § 24. Self-representation is a "fundamental constitutional right." *Montgomery v. Sheldon*, 181 Ariz. 256, 259, 889 P.2d 614, 617 (1995) (citing *Faretta*, 422 U.S. at 836). In *Edwards v. Arizona*, the United States Supreme Court stated that a waiver of counsel "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" 451 U.S. 477, 482 (1981)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A trial court may also consider evidence of a defendant's knowledge and understanding when he waived counsel. *State v. Martin*, 102 Ariz. 142, 146, 426 P.2d 639, 643 (1967).

### 1.

¶17    Dann asserts that "the lack of any meaningful contact with appointed counsel, lack of work on his case, and additional conflicts revealed during a brief meeting with counsel, prompted [him] to request that his counsel withdraw." He requested that his appointed counsel be replaced with "competent conflict free counsel."

¶18    Dann's argument that a defendant is entitled to competent counsel is, of course, correct. A defendant forced to

choose between incompetent or unprepared counsel and appearing pro se faces "a dilemma of constitutional magnitude." *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976).

¶19 Contrary to Dann's assertion, no cognizable conflict existed here. Dissatisfaction with counsel does not, of itself, warrant a hearing to determine counsel's competence and does not affect whether the waiver was voluntary, knowing, and intelligent. *State v. Djerf*, 191 Ariz. 583, 591-92 ¶ 24, 959 P.2d 1274, 1282-83 (1998). In fact, Dann did not claim his appointed counsel were ineffective. He stated, "I noticed the Court of an actual conflict of interest with counsel who had been appointed, from my position, incapable of providing not—I'm sorry, just so it's very clear—not ineffective, but competent prompt, diligent assistance of counsel." Accordingly, Dann's "conflict" focused on counsel's failure to communicate with him as quickly and frequently as he wished, not on their effectiveness or ability to represent him. Those assertions do not describe a cognizable conflict. *See id.*

¶20 In addition, Dann has failed to show prejudice. No trial date was set when Soslowsky and Schaus were appointed to represent Dann in February and March, 2004. Although Soslowsky and Schaus could not immediately work on Dann's case, no prejudicial delay resulted. In addition, Dann was not prevented from presenting arguments to the court regarding any potential

conflict of interest.  We find no error.

## 2.

¶21    Dann also asserts that an irreconcilable conflict existed because the presence of appointed counsel affected Dann's ability to decide which arguments to make to support his claims of innocence.  In deciding whether to appoint new counsel, a court should consider several factors:

> [W]hether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel.

*State v. LaGrand* (*LaGrand I*), 152 Ariz. 483, 486-87, 733 P.2d 1066, 1069-70 (1987).  "Although irreconcilable conflict is not permitted, conflict between counsel and a criminal defendant is but one factor a court should consider in deciding whether to substitute counsel."  *State v. Bible*, 175 Ariz. 549, 591, 858 P.2d 1152, 1194 (1993).  In addition, we do not regard disagreement over defense strategy as an "irreconcilable conflict."  *See State v. Cromwell*, 211 Ariz. 181, 186 ¶ 29, 119 P.3d 448, 453 (2005) ("A single allegation of lost confidence in counsel does not require the appointment of new counsel, and disagreements over defense strategies do not constitute an irreconcilable conflict.").

¶22    Here, Dann explicitly told the court that his counsel

10

were not incompetent; he based his motion instead on their perceived failure to provide prompt, diligent assistance of counsel. In addition, Dann had a history of asserting "irreconcilable conflicts" with counsel that amounted not to conflicts but rather to disagreements about strategy or concern about lack of attention. Accordingly, no "irreconcilable conflict" developed between Dann and his appointed counsel.

**3.**

¶23    Dann's final argument regarding his counsel centers on alleged inadequacies of the *Faretta* hearing. Dann argues the court failed to conduct a "penetrating and comprehensive" inquiry of Dann before accepting his waiver of counsel.

¶24    A prospective pro se litigant must understand (1) the nature of the charges against him, (2) the dangers and disadvantages of self-representation, and (3) the possible punishment upon conviction. *See State v. Cornell*, 179 Ariz. 314, 323-24, 878 P.2d 1352, 1361-62 (1994). "Although a court should warn of the dangers and disadvantages generally inherent in self-representation, . . . it is not reversible error to fail to warn of every possible strategic consideration." *Id.* at 324, 878 P.2d at 1362 (citing *Faretta*, 422 U.S. at 835).

¶25    Here, the court explained to Dann that attorneys can be of great value and assistance in a criminal case. The trial court conducted a complete waiver of counsel proceeding,

following the procedure described in Rule 6.1.c. The trial court did not abuse its discretion in finding that Dann knowingly, intelligently, and voluntarily waived counsel.

## B.

¶26 Dann contends that his murder convictions are void because the original trial judge improperly ruled on a motion for recusal and because the State presented perjured testimony to the grand jury. We will not address the merits of this argument because we affirmed Dann's convictions in *Dann I*, 205 Ariz. at 576 ¶ 76, 74 P.3d at 250; Dann cannot challenge his convictions in this appeal from his resentencing.

## C.

¶27 Dann makes two arguments related to the composition of the jury. He contends that because the trial court death-qualified his jury, his constitutional right to a trial by a fair and impartial jury was violated and that because he was sentenced by a jury different from the one that decided his guilt, he did not receive a reliable sentencing proceeding. We review constitutional issues de novo. *State v. Pandeli* (*Pandeli III*), 215 Ariz. 514, 522 ¶ 11, 161 P.3d 557, 565 (2007).

¶28 Arizona has upheld death qualification of jurors. *See, e.g.*, *State v. Bocharski*, 218 Ariz. 476, 483 ¶¶ 19-20, 189 P.3d 403, 410 (2008); *State v. Moody* (*Moody II*), 208 Ariz. 424, 449 ¶¶ 83-84, 94 P.3d 1119, 1144 (2004) (rejecting, post-*Ring*,

12

defendant's argument that he was denied an impartial and representative jury by the trial judge's decision to death qualify the jurors and declining to revisit earlier holdings upholding the constitutionality of death qualification of juries); *State v. Hoskins*, 199 Ariz. 127, 141 ¶¶ 49-50, 14 P.3d 997, 1011 (2000) (rejecting, pre-*Ring*, defendant's claim that death qualification of jurors violates due process).

¶**29** Dann also claims that using a different jury for the resentencing proceeding improperly shifted responsibility between the two juries with respect to the ultimate decision to impose death. *See Caldwell v. Mississippi*, 472 U.S. 320, 328-29 (1985) (stating that a jury should not be led to believe that responsibility for determining appropriateness of defendant's death rests elsewhere).

¶**30** We have previously rejected similar arguments. *See State v. Hampton*, 213 Ariz. 167, 175 ¶ 31, 140 P.3d 950, 958 (2006) (finding that jury instruction made it clear that the penalty phase jury was responsible for the sentencing decision); *State v. Ellison*, 213 Ariz. 116, 136 ¶ 83, 140 P.3d 899, 919 (2006) (rejecting defendant's argument that A.R.S. § 13-703.01 (2001) violates the Eighth Amendment by allowing the guilt-phase jury to shift responsibility to the sentencing-phase jury). Here, the resentencing jury received clear instruction that it alone would determine the appropriate sentence for Dann.

13

**¶31** Dann contends that subjecting him to a second trial seeking the death penalty violated the prohibition against double jeopardy. *See* U.S. Const. amend. V. We review de novo whether a second trial violates double jeopardy. *State v. McGill*, 213 Ariz. 147, 153 ¶ 21, 140 P.3d 930, 936 (2006).

**¶32** Dann claims that double jeopardy barred resentencing him to death because the trial court impliedly acquitted him of the § 13-751.F.8 aggravator at the first sentencing proceeding. Following the guilt trial, the trial court found as a matter of fact that the State had failed to prove the § 13-751.F.6[3] aggravator but had proved the F.8 aggravator as to each murder, based solely upon its finding that the jury convicted Dann of three counts of murder. On appeal, we held that the judge improperly analyzed the aggravating circumstance, but nevertheless found "that given the uncontroverted evidence on these points, no jury could have found other than that the three murders in this case were temporally, spatially, and motivationally related." *Dann II*, 206 Ariz. at 374 ¶ 11, 79 P.3d at 61.

**¶33** Although we have held that capital sentencing

---

[3] A murder committed in an "especially heinous, cruel or depraved manner" is also an aggravating circumstance considered in determining whether to impose a sentence of death. A.R.S. § 13-751.F.6.

proceedings are trials for purposes of double jeopardy, we have also held that absent an acquittal of the death penalty, double jeopardy does not bar again imposing the death penalty after a new trial. *State v. Poland*, 144 Ariz. 388, 403-04, 698 P.2d 183, 198-99 (1985). *Poland* held that even when this Court concluded that the only aggravating circumstance that was found in support of the death penalty in the first trial had not been established, the death penalty could still be imposed following a new trial if the defendant was sentenced to death, rather than to imprisonment, at the end of his first trial. *Id*.

¶34    Dann was sentenced to death by the trial court at the previous sentencing. In addition, the trial court found that the State had established the F.8 aggravating factor. Although the court erred in its legal analysis, we found any error to be harmless beyond a reasonable doubt. The prohibition against double jeopardy did not bar the State from seeking the death penalty at the resentencing proceeding.

### E.

¶35    Dann contends that the trial court's decision to excuse two jurors for cause denied him his constitutional right to a fair and impartial jury. We review for an abuse of discretion a trial court's decision whether to strike a juror for cause. *Ellison*, 213 Ariz. at 137 ¶ 88, 140 P.3d at 920.

¶36    After the potential jurors filled out questionnaires,

15

the prosecutor asked the panel members during voir dire whether they could follow the instructions and impose the death penalty. Two prospective jurors were excused based on their answers to these follow-up questions.

¶37     Prospective juror 64 indicated that she did not "feel comfortable with playing God and deciding who lives and who dies."   The trial judge asked her if she could, under any circumstances, vote for or impose the death sentence.   She stated, "No . . . I would not be able to have that on my conscience."   The judge excused her.

¶38     Prospective juror 73 stated she could not ever vote to impose the death penalty.   The judge also asked her if she would be "able to vote in favor of the death penalty in a case such as this"; she responded, "No."   The judge also excused her.

¶39     In a capital case, the judge may exclude for cause those jurors who would never vote for the death penalty, but not those who have "conscientious or religious scruples" against the infliction of the death penalty that they could set aside. *Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968).   A juror whose views on the death penalty would "'prevent or substantially impair the performance of his duties as a juror'" may be removed for cause.   *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)); *State v. Anderson* (*Anderson I*), 197 Ariz. 314, 318-19 ¶ 9, 4 P.3d 369,

16

373-74 (2000). The State need not prove a juror's opposition to the death penalty with "unmistakable clarity," *Wainwright*, 469 U.S. at 424, but follow-up questions should be asked if written responses do not show that the juror will be able to follow the law. *Anderson I*, 197 Ariz. at 319 ¶ 10, 4 P.3d at 374.

¶40    Here, the two prospective jurors' answers clearly indicated that their views on the death penalty would prevent or substantially impair them from being fair and impartial in sentencing Dann. In light of their answers about their ability to disregard personal feelings and impose the death penalty, the trial court did not abuse its discretion in excluding these two jurors for cause.

**F.**

¶41    Dann contends that the trial court abused its discretion by permitting the State to offer evidence not presented during the first trial in support of the F.8 aggravating circumstance. We review a trial court's decision whether to preclude evidence not presented at the first trial for an abuse of discretion. *Moody II*, 208 Ariz. at 439 ¶ 27, 94 P.3d at 1134.

¶42    In *Moody II*, we addressed whether the State's ability to present a better case on retrial violated double jeopardy principles. *Id*. at 438-39 ¶¶ 24-27, 94 P.3d at 1133-34. We held that "[w]hen a case is reversed for any reason but

17

insufficient evidence, 'the original conviction has been nullified and the slate wiped clean.'" *Id.* at 439 ¶ 26, 94 P.3d at 1134 (quoting *Bullington v. Missouri*, 451 U.S. 430, 442 (1981)). It follows that "if the slate is 'wiped clean,' the state is not limited to using evidence presented at the first trial." *Id.*

¶43     Here, the trial judge limited neither the State nor Dann to evidence presented in the first trial. The judge did not abuse his discretion in denying Dann's motion to preclude the State from presenting evidence in support of the F.8 aggravator that had not been presented at the original trial and sentencing proceeding.

### G.

¶44     Dann contends that the trial court abused its discretion and denied him his right to a fair trial when it admitted irrelevant, gruesome autopsy photographs. We review a trial court's rulings on the admissibility of photographic evidence for an abuse of discretion. *McGill*, 213 Ariz. at 154 ¶ 30, 140 P.3d at 937.

¶45     Five autopsy photographs were admitted when Dr. Keen, the medical examiner, testified during the aggravation phase. Dann moved for a mistrial, arguing that the admitted photographs were not relevant to prove the F.8 aggravator because, on cross-examination, Dr. Keen testified that the photographs did not

18

show the relationship of the victims. The court denied the motion, stating the photographs illustrated Keen's testimony, including showing "trajectories and other things which certainly relates to the spatial . . . [and] temporal relationship of the murders."

¶46    Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ariz. R. Evid. 403.[4]    When assessing the admissibility of photographs, we "consider the photographs' relevance, the likelihood that the photographs will incite the jurors' passions, and the photographs' probative value compared to their prejudicial impact." *McGill*, 213 Ariz. at 154 ¶ 30, 140 P.3d at 937. Because "[t]here is nothing sanitary about murder," nothing "requires a trial judge to make it so." *State v. Rienhardt*, 190 Ariz. 579, 584, 951 P.2d 454, 459 (1997). Photographs cannot be introduced, however, "for the sole purpose of inflaming the jury." *State v. Gerlaugh*, 134 Ariz. 164, 169, 654 P.2d 800, 805 (1982).

¶47    The photographs here were relevant and not unduly prejudicial. Although Dr. Keen could not definitively explain the temporal, spatial, and motivational relationship among the murders, his testimony, combined with other evidence, provided

---

[4]    Pursuant to A.R.S. § 13-751.B, the rules of evidence apply to the aggravation phase.

19

relevant information as to the relationships among the murders. Tina Pace-Morrell testified that Dann related the sequence of the murders and how he had shot the victims. Her testimony, in light of the autopsy photographs, gave the jurors a clear picture of the temporal, spatial, and motivational relationships. In addition, the trial court carefully examined all the crime scene and autopsy photographs of the victims and excluded the most gruesome ones. Each of the four autopsy photographs shown to the jury illustrated a different wound of the three victims; none was cumulative or duplicative. *See Reinhardt*, 190 Ariz. at 584, 951 P.2d at 459 (noting that each photograph conveyed different, relevant information about the crime and, thus, were not unduly prejudicial). The trial court did not abuse its discretion by admitting photographs that were relevant and minimally prejudicial to prove the F.8 aggravating circumstance.

## H.

¶48    Dann contends that the trial court abused its discretion by denying his motion for a mistrial after the court ruled inadmissible gruesome photographs shown to the jury during the State's opening statement. We will not overturn a trial judge's decision to deny a motion for mistrial unless we find an abuse of discretion. *State v. Jones*, 197 Ariz. 290, 304 ¶ 32, 4 P.3d 345, 359 (2000).

¶49    The prosecutor asked the court's permission to use photographs contained in a PowerPoint presentation during his opening statement. The judge allowed the presentation but warned of the potential grounds for a mistrial if the court did not later admit the photographs. The court later precluded as cumulative three photographs included in the opening presentation. Dann moved for a mistrial but the court denied the motion, explaining that "ultimately equivalent or even more graphic photos were admitted with Dr. Keen's testimony," and indicating that the photographs were relevant.

¶50    "A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983). Although a prosecutor's opening statement should not refer to inadmissible evidence, *State v. Bracy*, 145 Ariz. 520, 526-27, 703 P.2d 464, 470-71 (1985), nothing indicates that the prosecutor here deliberately attempted to prejudice the jury. The court admitted several autopsy photographs that showed the victims' wounds. Three of the photographs contained in the opening PowerPoint were later excluded because they were cumulative, not because they were irrelevant or too gruesome. Other photographs just as graphic as those precluded were admitted into evidence,

21

so there is no reasonable likelihood that the three photographs affected the jury's verdict on the F.8 aggravator. Accordingly, the trial court did not abuse its discretion by denying Dann's motion for a mistrial.

## I.

¶51     Dann contends that errors involving jury instructions at his sentencing trial violated his constitutional rights. We consider the jury instructions as a whole to determine whether the jury received the information necessary to arrive at a legally correct decision. *State ex rel. Thomas v. Granville* (*Baldwin*), 211 Ariz. 468, 471 ¶ 8, 123 P.3d 662, 665 (2005). We review for abuse of discretion "whether the trial court erred in giving or refusing to give requested jury instructions." *Id.* We review de novo, however, whether the jurors were properly instructed. *State v. McCray*, 218 Ariz. 252, 258 ¶ 25, 183 P.3d 503, 509 (2008). If a defendant fails to object at trial, we review only for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005). Fundamental error goes to the foundation of the case, being "error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id.*

## 1.

¶52     The trial court gave a preliminary jury instruction

advising that resentencing was required because Dann was previously sentenced to death following "an unconstitutional hearing." Dann did not object to the instruction, so we review for fundamental error. *Id.*

¶53    Relying on *Caldwell v. Mississippi*, 472 U.S. at 333, Dann asserts that the preliminary instruction violates the Eighth Amendment and constitutes fundamental error because it improperly shifted the sense of responsibility for the sentencing decision from the present jury to the previous jury. We have noted that "*Caldwell* applies 'only to certain types of comment[s]—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision.'" *State v. Martinez*, 218 Ariz. 421, 429 ¶ 33, 189 P.3d 348, 356 (2008) (alteration in original) (quoting *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994)); *State v. Anderson (Anderson II)*, 210 Ariz. 327, 337 ¶ 22, 111 P.3d 369, 379 (2005)(same).

¶54    The preliminary instruction given by the trial court in this case did not undermine the jury's sense of responsibility. The jury was instructed that it would make the final decision as to life or death and that its decision was binding. Dann has failed to show that any error resulted from this preliminary instruction.

23

¶55    Dann argues that the jury instruction defining the F.8 aggravator failed to comply with Arizona and federal constitutional law and is facially vague.

¶56    The trial court instructed the jury regarding the F.8 aggravator in relevant part as follows:

> To determine whether the state has proven this allegation, you must determine whether the murders were committed during the same course of conduct. In order to find this factor, the state must prove beyond a reasonable doubt that there is a temporal, spatial, and motivational relationship between the murders.

Dann requested an additional limiting instruction that stated: "The conviction of multiple murders alone is not sufficient to meet this aggravator." The trial court denied his request for the limiting language, noting that, under the existing instruction, the State had to prove a temporal, spatial, and motivational relationship between the murders.

¶57    Section 13-751.F.8 provides that an aggravating circumstance exists if "[t]he defendant has been convicted of one or more other homicides . . . which were committed during the commission of the offense." We have interpreted the F.8 aggravator as requiring more than the existence of multiple homicides; the homicides also must be temporally, spatially, and motivationally related, taking place during one continuous course of criminal conduct. *Dann II*, 206 Ariz. at 373 ¶ 6, 79

P.3d at 60.

¶58    The instruction in this case cured any potential vagueness by using language from case law interpreting the F.8 aggravator, specifically that the murders be temporally, spatially, and motivationally related. Accordingly, the F.8 aggravator is not unconstitutionally vague.

### 3.

¶59    Dann contends that the preliminary jury instructions violated his rights to the presumption of innocence, proof beyond a reasonable doubt, an impartial jury, and due process.

¶60    The trial court's preliminary jury instructions stated:

> In this aggravation phase, you are not to retry the issue of defendant's guilt. Your sole duty in this phase is to determine whether the State has proven beyond a reasonable doubt that the first-degree murder of either Shelly Parks, Andrew Parks and Ed Payan, or all three, was or were committed with the existence of the aggravation factor alleged.

¶61    Another instruction stated that "the defendant [has] been properly found guilty of first-degree murder. You are to accept that fact and not revisit the issue of guilt." The court advised the jury it could find Dann eligible for the death penalty only if it found beyond a reasonable doubt that "[t]he defendant has been convicted of one or more homicides that were committed during the commission of the offense."

¶62    Dann argues that the trial court directed a verdict on

the first element of the F.8 aggravating circumstance when it informed the jurors that Dann had already been convicted of multiple homicides.

¶63 Dann makes no convincing argument that a constitutional violation occurred. The trial court did not establish the first element of the F.8 aggravator, as Dann asserts. The jury found that "element" in the first trial. The instruction then informed the sentencing jury of the additional findings needed to establish the F.8 aggravator. Accordingly, the trial court did not direct a verdict on the F.8 aggravator, and we find no error.

**4.**

¶64 Dann claims that the jury instruction setting forth the burden of proof for aggravating factors violated his right to a fair trial before an impartial jury. During both the preliminary and final jury instructions in the aggravation phase, the court advised the jury over Dann's objection that "[i]f[,] based upon your consideration of the evidence, you're firmly convinced that the alleged aggravating factor has been proven, then you must so find." Dann argued that the instruction violated traditional constitutional guarantees regarding the jury by usurping the jury's function because it directed the jurors that they must find the F.8 aggravator if they were "firmly convinced" of it.

26

¶65    In *State v. Portillo*, we approved a uniform jury instruction on reasonable doubt and "instruct[ed] that in every criminal case, trial courts shall give the reasonable doubt instruction" we set forth.  182 Ariz. 592, 596, 898 P.2d 970, 974 (1995).  The relevant part of the *Portillo* instruction provides that "[i]f[,] based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him/her guilty."  *Id*.  As Dann acknowledges, we have repeatedly rejected challenges to the *Portillo* instruction.  *See, e.g.*, *Ellison*, 213 Ariz. at 133 ¶ 63, 140 P.3d at 916; *State v. Van Adams*, 194 Ariz. 408, 417-18 ¶¶ 29-30, 984 P.2d 16, 25-26 (1999).  Because an aggravating circumstance is analogous to an element of a crime, it must be found beyond a reasonable doubt and the instruction was, therefore, mandatory.  If the instruction adequately describes reasonable doubt as to the crime charged, it is difficult to argue it is not adequate for an element of the crime.  The trial court properly instructed the jurors on the burden of proof regarding the aggravating circumstance.

### J.

¶66    Dann asserts that the trial court abused its discretion by refusing to accept the stipulations entered between the parties during the first trial or to permit the introduction of additional evidence of innocence.  We review a

27

trial court's rulings on the admission of evidence for an abuse of discretion. *State v. Boggs*, 218 Ariz. 325, 334 ¶ 38, 185 P.3d 111, 120 (2008).

¶67        During the guilt phase of Dann's trial, the prosecutor and defense counsel stipulated that the police developed nineteen latent fingerprints from Andrew's apartment that did not match Dann's fingerprints. After remand, the trial court ordered the State to disclose the nineteen prints, along with previously undisclosed palm prints from the gun, to a latent print examiner. Dann wanted to submit two stipulations to the sentencing jury: (1) that latent prints were taken from the crime scene and determined not to be Dann's (admitted during guilt phase) and (2) that latent prints taken from the revolver did not match Dann's (not admitted during guilt phase). The court inquired into the relevance of the fingerprint evidence in relation to the F.8 aggravator and ultimately concluded that the fingerprint evidence applied only to the question of residual doubt and was irrelevant to determining how the murders occurred in relationship to each other.

¶68        In addition, Dann asked permission to argue residual doubt as a mitigating circumstance. The court precluded counsel from making a residual doubt argument during the penalty phase.

¶69        The rules of evidence govern the aggravation phase. *See* § 13-751.B. The question then is whether the evidence Dann

28

wanted to present was relevant. According to A.R.S. § 13-752.L, "the jury impaneled in the aggravation phase shall not retry the issue of the defendant's guilt." Accordingly, the trial court correctly determined that if Dann intended to use the fingerprint evidence only to re-litigate or cast doubt upon his guilt, the evidence was irrelevant to the sentencing proceedings. The trial court did not abuse its discretion in precluding the fingerprint evidence.[5]

## K.

¶70 Dann raises three issues regarding the verdict forms. We review de novo whether the trial court's verdict forms were adequate. *State v. Woods*, 141 Ariz. 446, 456, 687 P.2d 1201, 1211 (1984).

## 1.

¶71 Dann first contends that the trial court's refusal to provide the jury with separate special verdict forms regarding the *Enmund/Tison* finding violated Arizona law, his right to a unanimous verdict, and due process.

¶72 A defendant cannot be sentenced to death for felony murder unless he personally killed, attempted to kill, or intended that lethal force be employed, *Enmund v. Florida*, 458

---

[5] We address *infra* ¶¶ 117-122 additional constitutional challenges to the preclusion of residual doubt evidence in Dann's resentencing.

U.S. 782, 798 (1982), or was a major participant in the underlying felony and acted with reckless indifference to human life, *Tison v. Arizona*, 481 U.S. 137, 157-58 (1987). The relevant Arizona statute now requires the jury to make any such finding. A.R.S. § 13-752.P.

¶73    Here, the jury found Dann guilty of the premeditated murder of Andrew Parks, and we upheld this verdict on appeal. *See Dann I*, 205 Ariz. at 576 ¶ 76, 74 P.3d at 250. Accordingly, given this premeditated murder verdict, no further *Enmund/Tison* finding was necessary to support the capital sentence imposed for this murder conviction.

¶74    In addition, no evidence at the guilt trial pointed to an accomplice to the murders. We have recognized that the constitution does not bar the death penalty for a defendant who is convicted under a felony murder theory and who, acting alone, actually killed. *See State v. Atwood*, 171 Ariz. 576, 649, 832 P.2d 593, 666 (1992), *disapproved on other grounds by State v. Nordstrom*, 200 Ariz. 229, 25 P.3d 717 (2001).

¶75    Finally, the jurors necessarily made the *Enmund/Tison* finding. The preliminary and final instructions included the *Enmund/Tison* test and informed the jury that it could not find Dann eligible for a death sentence for the murders of Shelly Parks and Eddie Payan unless they first made the *Enmund/Tison* finding. Jurors are presumed to have followed their

30

instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Accordingly, no violation of Arizona law or denial of due process resulted when the court did not submit a separate *Enmund/Tison* verdict form to the jury.

## 2.

¶76 Next, Dann claims that the disjunctive form of verdict given to the jury violated his rights to a unanimous verdict and due process. Because Dann did not object to this alleged trial error, we review for fundamental error. *See Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶77 The trial court gave the jury three verdict forms related to the F.8 aggravator. For each murder, the verdict form asked if the State proved beyond a reasonable doubt that the murder of either of the other victims "or both" was committed during the murder at issue. Dann argues the jury erroneously believed that it could find the circumstance "as long as 12 of them agreed that one of the murders was spatially, temporally, and motivationally related to another." The court, however, required the finding as to each murder and specifically stated in the final instructions that "you must make this decision separate[ly] as to each murder uninfluenced by your decisions as to the other two murders."

¶78 Dann also argues that as to each F.8 finding, the

31

jurors might have found either one other murder, but not necessarily one involving the same victim, or both other murders, resulting in "non-unanimous" verdicts.

¶79    The Arizona Constitution requires that "[t]he right of trial by jury shall remain inviolate. . . .  In all criminal cases the unanimous consent of the jurors shall be necessary to render a verdict."  Ariz. Const. art. 2, § 23.  Jurors may, however, reach a verdict based on a combination of alternative findings.  *See State v. Gomez*, 211 Ariz. 494, 498 n.3 ¶ 16, 123 P.3d 1131, 1135 n.3 (2005) (reaffirming the principle that "[a] jury need not be unanimous as to the theory of first degree murder as long as all agree that the murder was committed") (citing *Schad v. Arizona*, 501 U.S. 624, 645 (1991); *State v. Tucker*, 205 Ariz. 157, 167 ¶ 51, 68 P.3d 110, 120 (2003)).  The instructions here required unanimous agreement that at least one other murder occurred during the murder at issue.

¶80    The jury verdict mirrors the F.8 statutory language, which is in the disjunctive.  *See* § 13-751.F.8 ("The defendant has been convicted of one or more other homicides . . . .").  Accordingly, either all or one other homicide could constitute an aggravating circumstance.  *See State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896 (1980) ("The statutory expression is in the disjunctive, so either all or one could constitute an aggravating circumstance.").

32

¶81        "It is only when the instructions taken as a whole are such that it is reasonable to suppose the jury would be misled thereby that a case should be reversed for error therein." *Macias v. State*, 36 Ariz. 140, 153, 283 P. 711, 716 (1929). The verdict forms for the F.8 aggravator were not misleading and did not create fundamental error.

### 3.

¶82        Dann asserts that the trial court violated the Eighth and Fourteenth Amendments and the Ex Post Facto Clause because the court did not provide the jury special verdict forms or interrogatories on which the jury could indicate its reasons for imposing the death sentence. We have rejected this argument. *See State v. Roque*, 213 Ariz. 193, 226 ¶ 141, 141 P.3d 368, 401 (2006); *State v. Roseberry*, 210 Ariz. 360, 373 & n.12 ¶ 74, 111 P.3d 402, 415 & n.12 (2005).

¶83        As to Dann's ex post facto argument, we have held that jury sentencing is a procedural change from prior law, not a substantive change. *See Roseberry*, 210 Ariz. at 364-65 ¶ 18, 111 P.3d at 406-07; *State v. Towery*, 204 Ariz. 386, 390 ¶ 11, 64 P.3d 828, 832 (2003). Accordingly, it does "not resemble the type of after-the-fact legislative evil contemplated by contemporary understandings of the ex post facto doctrine." *State v. Ring* (*Ring III*), 204 Ariz. 534, 547 ¶ 23, 65 P.3d 915, 928.

**L.**

¶84     Dann contends that the trial court abused its discretion by answering a jury question without first consulting the parties.

¶85     On April 26, 2007, the jury requested definitions of the words "motivation" and "motivational relationship."   The court responded in writing, "You must give the words their usual and accepted meaning."   The record is silent, however, on whether the court notified the parties before submitting this answer.   The State concedes that the better practice would have been for the judge to make a contemporaneous record with counsel about any jury question and the proposed response.

¶86     The general rule in Arizona is that reversible error occurs when a trial judge communicates with jurors after they have retired to deliberate unless the defendant and counsel have been notified and given an opportunity to be present.   *State v. Mata*, 125 Ariz. 233, 240-41, 609 P.2d 48, 55-56 (1980). Erroneous jury communications do not require reversal, however, if it can be said beyond a reasonable doubt that the defendant was not prejudiced by the communication.   *Id.* at 241, 609 P.2d at 56.

¶87     Because Dann and counsel were not notified of the jurors' request, the judge's communication was error.   The communication did not cause Dann prejudice, however, because the

34

court's answer to the jury question was legally correct and appropriate. *See State v. Sammons*, 156 Ariz. 51, 57, 749 P.2d 1372, 1378 (1988) (holding that there was no prejudice when the court sent a written note stating, "You have received all the instructions relevant to this case").

¶88    Here, the judge merely told the jurors to give "motivation" and "motivational" their "usual and accepted meaning." When a word in a statute is undefined, courts apply the ordinary meaning of the term. *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). This holds true when the term is part of a jury instruction based on a statute, and jurors are usually instructed to apply the ordinary meaning of any word or phrase not defined by the court. *See State v. Barnett*, 142 Ariz. 592, 594, 691 P.2d 683, 685 (1984) (holding that the court need not define a word if it is one commonly understood by those familiar with the English language). The court did not define the words without the input of counsel. Rather, it correctly informed the jurors to give the words their ordinary meaning. Although error occurred, it caused Dann no prejudice.

**M.**

¶89    Dann contends that the trial court's decision to allow the State to present mitigation evidence compiled against his wishes violated his constitutional rights. We review the trial

35

court's decision to admit evidence for an abuse of discretion. *Moody II*, 208 Ariz. at 439 ¶ 27, 94 P.3d at 1134.

**¶90** Dr. Jill Hayes, the State's expert witness during the penalty phase, testified that Dann did not suffer from borderline personality disorder after considering her interviews of Dann, his father, and his sister; the report by Dr. Gomez, Dann's expert witness; Dann's medical and mental health records; and the medical reports from the first sentencing, including those by the mental health experts and the mitigation expert. Dann argues that allowing Dr. Hayes to use the mitigation evidence from the first trial violated his Fifth Amendment right against self-incrimination because he was not cautioned before the examinations that led to those reports that his statements could be used against him.

**¶91** The United States Supreme Court has held that a defendant "who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Estelle v. Smith*, 451 U.S. 454, 468 (1981).

**¶92** Here, Dr. Gomez testified on behalf of Dann that Dann suffered from borderline personality disorder. This testimony opened the door to rebuttal from Dr. Hayes. *See State v. Schackart*, 175 Ariz. 494, 500, 858 P.2d 639, 645 (1993) ("[A]

36

defendant who places his or her mental condition in issue and gives notice of an intention to rely on psychiatric testimony has 'opened the door' to an examination by an expert appointed on motion of the state."). Accordingly, no Fifth Amendment violation occurred.

¶93 Dann apparently asserts that because he was represented by appointed counsel during the initial proceedings, he could not control the presentation of the mitigation evidence, resulting in a violation of his Sixth Amendment right to counsel. The State correctly argues, however, that Dann cannot present this Sixth Amendment claim on appeal; he must present this claim in a post-conviction relief proceeding. *See State v. Spreitz*, 202 Ariz. 1, 3 ¶ 9, 39 P.3d 525, 527 (2002) (holding that ineffective assistance of counsel claims are to be brought in Rule 32 proceedings).

### N.

¶94 Dann argues that § 13-751.E is unconstitutional because it does not require that once a defendant proves that mitigating circumstances exist, the State must prove that the evidence is not sufficiently substantial to call for leniency. We review legal and constitutional questions de novo. *McGill*, 213 Ariz. at 156, 159 ¶¶ 40, 53, 140 P.3d at 939, 942.

¶95 We have rejected this argument. *See Baldwin*, 211 Ariz. at 471-72 ¶¶ 9-17, 123 P.3d at 665-66 (holding that

37

"neither party bears the burden" of persuading the jurors that mitigation is sufficiently substantial to warrant leniency).

## O.

¶96 Dann contends that admitting inflammatory victim impact testimony after the presentation of his mitigation case violated Arizona Rule of Criminal Procedure 19.1.d and his rights under the Eighth Amendment. We review a trial court's admission of victim impact evidence for an abuse of discretion. *State v. Garza*, 216 Ariz. 56, 69 ¶ 60, 163 P.3d 1006, 1019 (2007). Dann also asserts that A.R.S. § 13-752.R violates the Eighth Amendment. Issues of statutory or constitutional interpretation are reviewed de novo. *McGill*, 213 Ariz. at 156, 159 ¶¶ 40, 53, 140 P.3d at 939, 942.

¶97 Dann's opening statement at the mitigation phase informed the jurors that they would hear from the victims during that phase. After an unrecorded bench conference, the State informed the court that it would call the victim witnesses as rebuttal witnesses, subject to cross-examination, rather than present the victim impact statements referred to in Rule 19.1.d(3). Dann objected to the procedure, although he did not argue that the victims should be precluded from giving the impact statements.

¶98 Arizona law permits victim impact evidence to rebut the defendant's presentation of mitigation evidence. Ariz.

38

Const. art. 2, § 2.1(A)4 (entitling a victim to be heard at sentencing); § 13-752.R (granting a victim the right to be heard at the penalty phase); A.R.S. § 13-4426 (2001) (allowing the victim to address the sentencing authority and present any information or opinions that concern the victim or the victim's family).  Victim impact evidence should not be allowed, however, if it is "so unduly prejudicial that it renders the trial fundamentally unfair."  *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).

¶99    Dann raises two challenges regarding the victim impact evidence.  He asserts that Rule 19.1 requires victim information be presented after the opening statements in the penalty phase of the trial, not as rebuttal evidence, and that § 13-752.R violates the Eighth Amendment by infusing irrelevant emotions into the proceeding.

**1.**

¶100    As to Dann's timing argument, Rule 19.1 does not prohibit a trial court from allowing presentation of victim testimony after a defendant presents mitigation evidence, particularly if the State offers the testimony as part of the State's rebuttal.  The timing in this case was not unusual, and we have rejected similar challenges.  *See State v. Carreon*, 210 Ariz. 54, 72 ¶¶ 90-93, 107 P.3d 900, 918 (2005).

39

**2.**

¶**101**     Dann argues that § 13-752.R violates the Eighth Amendment by infusing irrelevant emotions into the proceeding. We rejected this argument in *Lynn v. Reinstein*, 205 Ariz. 186, 191 ¶ 17, 68 P.3d 412, 417 (2003).  Here, the three victim witnesses explained the impact the murders had on their families and did not make a recommendation regarding sentencing.  In addition, the trial court gave a limiting instruction regarding the jurors' use of the content of the victims' statements, cautioning that the jurors could not rely upon the statements for a "purely emotional response" and that they were not to make comparative judgments about the value of human lives.  If any prejudice occurred, it was cured by the instructions.  *See Bocharski*, 218 Ariz. at 488 ¶ 53, 189 P.3d at 415; *Carreon*, 210 Ariz. at 72 ¶¶ 90–93, 107 P.3d at 918.

**P.**

¶**102**     Dann contends that the trial court erred in conducting multiple unrecorded bench conferences.  Dann did not request that these conferences be recorded, so we review for fundamental error.  *See Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶**103**     Unrecorded bench conferences involving the trial court, Dann, advisory counsel, and the prosecutor took place during the resentencing.  Dann occasionally made a later record about what was said at the conferences, but many of the

40

unrecorded conferences did not result in later comments on the record.

¶104    We have often disapproved the practice of not recording bench conferences. *See, e.g.*, *Gosewisch v. Am. Honda Motor Co.*, 153 Ariz. 400, 402, 737 P.2d 376, 378 (1987); *State v. Bay*, 150 Ariz. 112, 115, 722 P.2d 280, 283 (1986); *State v. Fletcher*, 149 Ariz. 187, 189, 717 P.2d 866, 868 (1986).   A defendant who does not object to proceeding without a reporter, however, waives his right to complain that the proceedings were not recorded.  *State v. Zuck*, 134 Ariz. 509, 512-13, 658 P.2d 162, 165-66 (1982).   Here, Dann did not object but instead proceeded with unrecorded bench conferences.

¶105    Moreover, Dann cannot show prejudice.  He argues that during an unrecorded bench conference on the final day of the penalty phase, he alerted the court to potential juror misconduct and argues that he was prejudiced because the bench conference would have revealed "why the trial court refused to take action on the misconduct prior to the completion of trial." The trial court, however, addressed Dann's allegations at a special hearing, discussed in the next section.   As that discussion reveals, no prejudice resulted from the fact that the bench conference was not recorded.

### Q.

¶106    Dann contends that the trial court abused its

41

discretion and violated his right to a fair and impartial jury when it refused to conduct an evidentiary hearing or replace jurors who may have violated the admonition not to discuss the evidence during trial. We review the trial court's ruling regarding alleged jury misconduct for an abuse of discretion. *See State v. Hall*, 204 Ariz. 442, 447 ¶ 16, 65 P.3d 90, 95 (2003).

¶107 The judge admonished the jurors not to talk with each other or form opinions about the case until they began deliberating at the end of the trial. On Friday, May 4, 2007, the final day of the penalty phase, Dr. Hayes testified for the State during rebuttal. Much of Dr. Hayes' testimony concerned Dann's childhood and the absence of any impact it had on Dann's conduct in this case. Following Dr. Hayes' testimony, the court adjourned for the noon recess and advised the jurors to remember the admonitions. After the noon recess, Dann and the State made closing arguments and final instructions were read. The jury decided to begin deliberations on Tuesday, May 8, 2007.

¶108 On Monday, May 7, 2007, Dann's advisory counsel stated that Dann had informed the court, during an unrecorded bench conference at the close of trial, of possible juror misconduct. Advisory counsel admitted he could not describe the misconduct in detail, but identified two potential witnesses: Nancy and Jordan Sloan. Counsel believed four jurors had discussed the

42

testimony of Dr. Hayes during their lunch on May 4, before deliberations began.

¶109    The court decided to question the Sloans before determining whether to talk to the four jurors. On Tuesday, May 8, 2007, the trial court conducted a hearing outside the presence of the jury to take testimony from the Sloans. Before the hearing, the judge instructed the jurors not to discuss the case and not to deliberate until further notice. The jurors were not aware of the jury misconduct hearing or the circumstances surrounding the hearing.

¶110    Nancy Sloan testified that she had joined her son at a lunch table next to a table being used by four of the jurors in Dann's case. She indicated the jurors "seemed" to be talking about the case. She interpreted one juror's statements as referring to "what a bad childhood [the juror] had had" and "that nothing compared to what [the juror] experienced." She could not distinguish who was talking and did not know if all four jurors joined the conversation. She also heard someone talking about "people having choices." She did not hear the jurors talk about Dann's childhood, hear them mention his name, or hear specific discussions about the case. Ms. Sloan indicated that she interpreted the jurors' statements as referring to Dr. Hayes' testimony about choices and inferred that they were not being sympathetic to the defense's mitigation

43

argument.  She could identify only two of the four jurors.  She reported the matter to Dann's family and Dann's advisory counsel.

¶111	Jordan Sloan, Nancy Sloan's son, testified that he overheard the lunch conversation.  He told the court that he chose the table so he could be close to the jurors.  After he sat down, he heard "something to the effect of, that it was interesting to hear how events in one's childhood could or would lead to . . . specific events or certain behaviors as you got older."  He could not distinguish who was speaking (including whether it was a male or female voice) and because of the wind, did not hear anything further.  He did not hear specific references to Dann, to events that Dr. Hayes had described, or any comments about choices, any specific individual, or anything involved in the case.  He did identify two jurors who were part of the general conversation.

¶112	Finally, Jonell Dann testified that she joined Nancy and Jordan Sloan at the lunch table and did not overhear any conversation by the jurors.  She testified that neither Nancy nor Jordan told her what they had heard.  She thought three jurors, all male, were together, and identified two of them.

¶113	Advisory counsel stated, "We are not completely sure exactly what was said."  He further stated that he did not know whether the conversations were specifically related to reaching

44

conclusions about Dann but that discussions did occur. Advisory counsel proposed that the judge talk to jurors 1, 7, 11, and 12 (two of whom were alternates) and, if the judge determined they were involved in the conversation, he should excuse them. The State opposed talking to the jurors because the defense had not presented any specific information to show any juror violated the admonition.

¶114 The court concluded that nothing had occurred other than discussion of topics that are part of everyday conversation. Nothing in the conversations indicated that any juror attempted to influence the other jurors before deliberations. Accordingly, the court denied the defense request to strike, also noting the general "nature of the comments" and Dann's failure to bring the issue to the court when he found out about it shortly after the May 4 lunch recess.

¶115 Dann argues that we should vacate his sentences and remand for a new trial because the trial court abused its discretion by denying Dann's motion to strike the jurors who allegedly violated the admonition against discussing the case prior to deliberations. He claims the jurors' action violated the Sixth Amendment guarantee of the right to trial "by an impartial jury." *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965). To protect the right to an impartial jury and to due process, a jury must refrain from premature deliberations.

45

*United States v. Gianakos*, 415 F.3d 912, 921 (8th Cir. 2005). When there are premature deliberations without evidence of external influence, however, "there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial." *Id.* at 921-22. Accordingly, "juror misconduct warrants a new trial [only] if the defense shows actual prejudice or if prejudice may be fairly presumed from the facts." *State v. Miller*, 178 Ariz. 555, 558, 875 P.2d 788, 791 (1994) (emphasis removed).

¶116 Although we regard any case-related discussion among jurors as troubling, the record shows that Ms. Sloan, Dann's strongest witness, did not hear the jurors specifically discuss Dann's childhood or mention Dann's name, the case, or any testimony from Drs. Hayes or Gomez. Indeed, Jordan Sloan admitted he could not hear anything specific and Jonell Dann did not hear any conversations at all. Dann presented little evidence of what was said or who said it. *Cf. State v. Cruz*, 218 Ariz. 149, 163-64 ¶¶ 69-82, 181 P.3d 196, 210-11 (2008) (questioning specific jurors about specific conversation heard by other jurors). Moreover, the trial judge heard the witnesses testify and could assess their credibility. On balance, we hold that the trial court did not abuse its discretion by declining to conduct additional hearings or strike the four jurors.

46

## R.

**¶117** Dann contends that the trial court's preclusion of evidence and argument regarding residual doubt violated his rights to present a complete defense and to have his jury consider all relevant mitigation and also violated the prohibition against ex post facto laws. We review a trial court's ruling on the admission of evidence at a capital sentencing for an abuse of discretion. *Garza*, 216 Ariz. at 68 ¶ 56, 163 P.3d at 1018.

**¶118** The trial court precluded evidence of Dann's innocence (or doubt regarding his guilt). Dann asserts, in essence, that the trial judge should have allowed him to present evidence of actual innocence. We have stated that "there is no constitutional requirement that the sentencing proceeding jury revisit the prior guilty verdict by considering evidence of 'residual doubt.'" *Ellison*, 213 Ariz. at 136 ¶ 82, 140 P.3d at 919; *see also Garza*, 216 Ariz. at 70 ¶ 67, 163 P.3d at 1020; *State v. Andriano*, 215 Ariz. 497, 506-07 ¶ 45, 161 P.3d 540, 549-50 (2007). We have also held that "[t]he plain language of provisions J through L of section 13-7[52] . . . makes residual doubt evidence irrelevant to capital resentencing proceedings." *State v. Harrod* (*Harrod III*), 218 Ariz. 268, 280 ¶ 44, 183 P.3d 519, 531 (2008). This issue has been resolved.

**¶119** Dann argues that preclusion of residual doubt evidence

47

violates the prohibition against ex post facto legislation because such evidence was admissible and considered by the sentencing judge before *Ring II*, but now cannot be considered by the sentencing jury.[6]

**¶120** Ex post facto clauses prohibit both the federal government and the states from enacting laws with certain retroactive effects. *See* U.S. Const. art. I, § 9, cl. 3 (federal government); *id*. § 10, cl. 1 (states); Ariz. Const. art. 2, § 25. In *Dobbert v. Florida*, the Supreme Court held that ex post facto prohibitions reach only those legislative enactments that affect substantive criminal law. 432 U.S. 282, 293 (1977). We have held that Arizona's statutory changes following *Ring II* were procedural, not substantive, and ex post facto principles therefore do not apply. *See Bocharski*, 218 Ariz. at 492 ¶¶ 76-78, 189 P.3d at 419; *Ring III*, 204 Ariz. at 547 ¶¶ 23-24, 65 P.3d at 928.

**¶121** We have also previously rejected Dann's argument that preclusion of residual doubt evidence violates the Eighth or Fourteenth Amendments. *Harrod III*, 218 Ariz. at 278-79 ¶ 37-40, 183 P.3d at 529-30; *see also Oregon v. Guzek*, 546 U.S. 517, 523

---

[6] Following *Ring II*, the legislature enacted A.R.S. § 13-703.01 (2002) (renumbered at § 13-752), which requires the jury to find and consider the effect of aggravating and mitigating circumstances and decide whether the defendant should receive a sentence of death.

(2006) ("We can find nothing in the Eighth or Fourteenth Amendments that provides a capital defendant a right to introduce new [residual doubt] evidence . . . at sentencing."). Accordingly, the trial court did not abuse its discretion in precluding Dann from presenting residual doubt evidence at the sentencing phase.

## s.

¶122    Dann asserts that the trial court abused its discretion by refusing to admit evidence informing the jury that if it did not impose a death sentence, Dann would stipulate to being sentenced to life without parole.  We review evidentiary decisions for an abuse of discretion, giving deference to the trial court's determination regarding relevance.  *State v. Smith*, 215 Ariz. 221, 232 ¶ 48, 159 P.3d 531, 542 (2007).

¶123    Dann filed a pretrial "waiver" of his statutory right to parole and stipulated that, should he receive a sentence less than death, he would agree to be sentenced to life without parole.  Dann requested that the jury be advised of this "waiver" during the penalty phase.  The court denied his request and gave a preliminary jury instruction that the possible sentences for Dann were "death, imprisonment for the remainder of his natural life, or imprisonment without the possibility of release until at least twenty-five calendar years have been served."  The instructions also stated that if Dann did not

49

receive a death sentence, the trial court would choose between the other possible sentences. Similarly, in the penalty phase, the trial judge instructed the jury that if Dann were not sentenced to death, the court would determine, on each conviction, whether he would serve a term of natural life or life without the possibility of release for twenty-five years, and would determine if the sentences would be concurrent or consecutive.

¶124    Dann may not "presentence" himself. The statute gives the trial court discretion to decide what penalty Dann should receive if spared the death penalty. *See* A.R.S. §§ 13-751.A, 752.Q. Moreover, only speculation supports the notion that Dann's attempted waiver would have any effect on a future decision of the Arizona Board of Executive Clemency. *See Cruz*, 218 Ariz. at 160 ¶¶ 44-45, 181 P.3d at 207. The trial court did not abuse its discretion by refusing Dann's request to inform the jury he would waive parole if spared the death penalty.

### T.

¶125    Dann contends that the cumulative effect of the State's prosecutorial misconduct deprived him of his right to due process. We will reverse a conviction because of prosecutorial misconduct if misconduct is present and "a reasonable likelihood exists that [it] could have affected the jury's verdict, thereby denying defendant a fair trial."

50

*Atwood*, 171 Ariz. at 606, 834 P.2d at 623. When a defendant objects to an alleged act of prosecutorial misconduct, we review the issue for harmless error; when a defendant fails to object, we engage in fundamental error review. *See State v. Velazquez*, 216 Ariz. 300, 311 ¶ 47, 166 P.3d 91, 102 (2007). Even if the alleged acts of misconduct do not individually warrant reversal, we must determine whether the acts "contribute to a finding of persistent and pervasive misconduct." *Roque*, 213 Ariz. at 228 ¶ 155, 141 P.3d at 403. We will reverse a conviction because of prosecutorial misconduct if the cumulative effect of the alleged acts of misconduct "shows that the prosecutor intentionally engaged in improper conduct and did so with indifference, if not a specific intent, to prejudice the defendant." *Id.* (citation omitted) (internal quotation marks omitted).

¶126    Dann argues that during the aggravation phase, the State committed misconduct in its opening argument, to which he objected and during the closing argument, to which he did not object. He also argues that the prosecutor committed misconduct in the penalty phase during the State's closing argument, to which he did not object. Our review of the record, however, reveals no individual acts of misconduct sufficient to warrant reversal or cumulative misconduct that permeated the entire atmosphere of the trial with unfairness. *See Bocharski*, 218 Ariz. at 492 ¶ 75, 189 P.3d at 419.

51

## U.

¶127    Dann contends that Arizona's death penalty scheme violates equal protection principles because, unlike the sentencing scheme for Arizona's non-capital defendants and federal capital defendants, it fails to require that the jury make specific findings of fact and conclusions of law reviewable by an appellate court. We review constitutional issues de novo. *Pandeli III*, 215 Ariz. at 522 ¶ 11, 161 P.3d at 565.

¶128    Criminal defendants do not constitute a suspect class and thus we need find only a rational basis for requiring that findings of fact and reasoning be stated on the record by the judge in non-capital cases, but not by the jury in capital cases. *See State v. LaGrand* (*LaGrand II*), 153 Ariz. 21, 30, 734 P.2d 563, 572 (1987). Several reasons justify the distinction. Perhaps the most important involves the traditional role of the jury. Although jurors serve as the arbiter of facts, *Pfeiffer v. State*, 35 Ariz. 321, 325, 278 P. 63, 65 (1929), we have never required them to state their factual findings. In contrast, we have a long history of requiring in some proceedings that judges who serve as triers of fact state their factual findings. *See, e.g.*, Ariz. R. Civ. P. 52(a) (requiring the court, sitting without a jury, to state findings of fact and conclusion of law separately). A rational basis exists for this distinction.

### III.

¶**129**    Because Dann's offenses occurred before August 1, 2002, we independently review the aggravating and mitigating factors, as well as the "propriety of the death sentence." A.R.S. § 13-755.A; *see also Roseberry*, 210 Ariz. at 373 ¶ 77, 111 P.3d at 415 (stating that this Court "independently reviews the jury's findings of aggravation and independently determines 'if the mitigation is sufficiently substantial to warrant leniency in light of existing aggravation'"(quoting *State v. Greene*, 192 Ariz. 431, 443-44 ¶ 60, 967 P.2d 106, 118-19 (1998))).

### A.

¶**130**    On remand, the jury found one aggravating factor proved beyond a reasonable doubt:  that Dann committed multiple murders during the commission of the offense.  § 13-751.F.8.  To satisfy this factor, the State must prove that the homicides were "temporally, spatially, and motivationally related, taking place during 'one continuous course of criminal conduct.'" *State v. Prasertphong*, 206 Ariz. 167, 170 ¶ 15, 76 P.3d 438, 441 (2003) (quoting *State v. Rogovich*, 188 Ariz. 38, 45, 932 P.2d 794, 801 (1997)).

¶**131**    It is uncontested that Dann's victims were killed in close proximity to one another.  All died in the same room of Andrew's apartment, where they had been seated near one another.

53

This satisfies the spatial relationship required to sustain the F.8 aggravating factor. *Dann II*, 206 Ariz. at 373 ¶ 8, 79 P.3d at 60.

¶132    Similarly, the evidence shows that all victims were killed within moments of one another. Tina Pace-Morrell, Dann's former girlfriend, testified that immediately after the killings, Dann came to her apartment and told her that he shot Andrew Parks, his intended victim, then Shelly Parks, and then Eddie Payan. The short, uninterrupted time within which these actions occurred satisfies the temporal relationship required to sustain the F.8 aggravating factor. *Id.* at 373 ¶ 9, 79 P.3d at 60.

¶133    Finally, the State established the motivational requirement through evidence that Dann went to the apartment intending to kill Andrew. George Thomas testified that Dann showed him a gun and said he was going to shoot Andrew because Andrew had shot at him. Tina Pace-Morrell also testified that Dann told her that he had murdered three people and later explained that he killed Andrew and Shelly because they laughed at him, and killed Eddie because he was a witness. The State proved the F.8 aggravator beyond a reasonable doubt.

**B.**

¶134    The next issue is whether the mitigation evidence was sufficiently substantial to call for leniency in light of the

54

F.8 aggravator. *See* A.R.S. § 13-755.B. In conducting our independent review, we do not require that a nexus between the mitigating factors and the crime be established before we consider the mitigation evidence. *See Tennard v. Dretke*, 542 U.S. 274, 287 (2004). We may consider a failure to establish such a causal connection, however, in assessing the quality and strength of the mitigation evidence. *See Anderson II*, 210 Ariz. at 350 ¶¶ 96-97, 111 P.3d at 392.

¶135 Dann asserted six non-statutory mitigating circumstances: (1) residual doubt, (2) difficult childhood (abandonment, physical abuse, and overmedication leading to drug abuse), (3) new goals on death row, amenability to rehabilitation, and lack of future dangerousness, (4) drug and mental health issues impairing his judgment, (5) remorse, and (6) family support and impact of execution on his family. Dann must prove mitigating circumstances by a preponderance of the evidence. A.R.S. § 13-751.C.

### 1.

¶136 Once a person is found guilty beyond a reasonable doubt, claims of residual doubt do not constitute mitigation for sentencing purposes. *See Harrod III*, 218 Ariz. at 280 ¶¶ 42-43, 183 P.3d at 531.

### 2.

¶137 A difficult family background may be a mitigating

circumstance in determining whether a death sentence is appropriate. Dann asserts that the death of his mother, physical abuse by his father, and his overmedication for attention deficit hyperactivity disorder (ADHD) should receive consideration.

**a.**

¶138 Dann's mother died when he was five years old, and he claims he suffers from pervasive abandonment issues. After Dann's mother died, his father remarried. In closing arguments, Dann admitted he "had a great family" that was "not dysfunctional." We therefore give this factor little mitigating weight.

**b.**

¶139 Dann's father disciplined him by spanking him, including with a belt as he grew older, acts that his father later viewed as child abuse. There was no evidence, however, of other physical abuse beyond the spanking, and we give this mitigation evidence little weight.

**c.**

¶140 Dann was diagnosed with ADHD as a child and prescribed Ritalin. Dr. Hayes testified that Dann nevertheless did well in school and enjoyed learning, despite some behavior problems. Dann's father testified that he obtained professional help for Dann, including counseling and treatment for his ADHD and other

drug problems, and sent him to private schools. Dann did not prove overmedication for ADHD as a mitigating factor.

**3.**

¶141 Dann presented mitigating evidence of his behavior and rehabilitation efforts while in prison. We typically give little weight to a defendant's good behavior while in prison because prisoners are expected to behave and adapt to prison life. *See, e.g., State v. Armstrong (Armstrong II)*, 218 Ariz. 451, 466 ¶ 80, 189 P.3d 378, 393 (2008); *Pandeli III*, 215 Ariz. at 533 ¶ 82, 161 P.3d at 576.

¶142 Dann also claims that he is a good candidate for rehabilitation and lacks future dangerousness. A defendant's potential for rehabilitation may be considered a mitigating factor. *See State v. Murray*, 184 Ariz. 9, 40, 906 P.2d 542, 573 (1995).

¶143 Dr. Gomez testified that past behavior and drug abuse are indicators of future dangerousness. He also testified that protective factors, those that would decrease someone's risk for future violence, include a sufficient IQ, social support, and involvement in a structured work environment while incarcerated. Dr. Gomez also testified that past significant violence, specifically a triple homicide, is one factor indicating future dangerousness.

¶144 The record shows other acts of violence in Dann's

past. Dann's ex-wife testified that during their year of marriage, Dann used drugs and was very violent. On balance, the evidence does not establish a lack of future dangerousness.

**4.**

¶145    Next, Dann argues that his history of drug and alcohol use is mitigating on its own and because it impaired him on the night of the murders. Dann's father testified about Dann's history of drug abuse. Dann attended a residential alcohol abuse program at the age of eighteen and received counseling and treatment. He also participated in a hospital drug program during his year-long marriage when he was twenty-five.

¶146    Dr. Gomez concluded that Dann suffered from poly-substance abuse. Dr. Hayes testified that Dann indicated to her that he drank almost every day and had drunk a great deal since 1993. Dr. Hayes further testified that Dann may have been using alcohol and/or drugs when he committed the murders, based on reports from George Thomas and police reports. She also testified, however, that if Dann consumed alcohol every day, he would have developed a tolerance for the effects of the alcohol, making it difficult to ascertain whether his drinking affected his actions on the night of the murders.

¶147    Even assuming Dann was intoxicated at the time of the murders, however, "a defendant's claim of alcohol or drug impairment fails when there is evidence that the defendant took

58

steps to avoid prosecution shortly after the murder, or when it appears that intoxication did not overwhelm the defendant's ability to control his physical behavior." *Reinhardt*, 190 Ariz. at 591-92, 951 P.2d at 466-67. Dr. Hayes testified that Dann was able to function effectively the morning of the murders and returned to Andrew's apartment after the shootings and called police. The evidence does not support a finding that intoxication overwhelmed Dann's ability to control his behavior.

¶148    Dann claims that his long history of borderline personality disorders and ADHD impaired his judgment and caused him to "become very aggressive and act without thinking, but impulsively." Witnesses presented conflicting evidence as to whether Dann suffers from borderline personality disorder. For example, Dr. Gomez diagnosed Dann with borderline personality disorder and poly-substance abuse. Dr. Gomez could not testify about Dann's judgment at the time of the murder.

¶149    Dr. Hayes, however, testified that Dann was not mentally disturbed when he committed the murders and that his capacity to appreciate the wrongfulness of his conduct was not impaired. EEGs and MRIs showed no neurological impairment or brain damage, and Dr. Hayes concluded there was no brain damage. We give this mitigation evidence minimal weight.

### 5.

¶150    Dann alleges remorse as a mitigating circumstance. We

59

have recognized remorse as a non-statutory mitigating circumstance. We give little weight to remorse, however, when the defendant denies responsibility for his conduct. *See Andriano*, 215 Ariz. at 512 ¶ 76, 161 P.3d at 555 (noting that defendant continued to deny responsibility in finding that she had not proven remorse as a mitigating circumstance); *State v. Gulbrandson*, 184 Ariz. 46, 70-71, 906 P.2d 579, 603-04 (1995) (same); *cf. Velazquez*, 216 Ariz. at 315 ¶ 74, 166 P.3d at 106 (finding mitigating factor of remorse when, in allocution, defendant expressed remorse for the murder, apologized to the victim's family, and accepted responsibility for his conduct).

¶151 Dann maintained throughout the resentencing trial that he is actually innocent and that someone else killed the victims. Dann did not prove this mitigating factor by a preponderance of the evidence.

### 6.

¶152 Dann's father and sister testified that he has family support and that his execution would negatively affect them. Dann established this factor by a preponderance of the evidence.

### C.

¶153 After evaluating each aggravating and mitigating factor, we independently review the propriety of the death sentence. § 13-755.A. In our independent reweighing of the evidence, "we consider the 'quality and the strength, not simply

60

the number, of aggravating and mitigating factors.'" *Roque*, 213 Ariz. at 230 ¶ 166, 141 P.3d at 405 (quoting *Greene*, 192 Ariz. at 443 ¶ 60, 967 P.2d at 118). The State proved one aggravating factor, but that aggravating factor, multiple murders, "is entitled to 'extraordinary weight.'" *Garza*, 216 Ariz. at 72 ¶ 81, 163 P.3d at 1022 (quoting *Hampton*, 213 Ariz. at 185 ¶ 90, 140 P.3d at 968). In light of the significant aggravator, we must determine whether Dann's mitigating evidence is "sufficiently substantial to warrant leniency." *See* § 13-755.B.

¶154 Based on the foregoing evidence, Dann established only minimal mitigating evidence. Considered against the weighty aggravating factor, the mitigation evidence is not sufficiently substantial to warrant leniency.

## IV.

¶155 Dann raises twenty-two other constitutional challenges to preserve them for federal review. These arguments are set forth verbatim in the Appendix.

## V.

¶156 For the foregoing reasons, we affirm Dann's death sentences.

_____
Ruth V. McGregor, Chief Justice

61

CONCURRING:

_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice


_____
Philip Hall, Judge[*]

_____

[*] Justice Andrew D. Hurwitz has recused himself from this case. Pursuant to Article 6, Section 3, of the Arizona Constitution, the Honorable Philip Hall, Judge of the Arizona Court of Appeals, Division One, was designated to sit on this matter.

**APPENDIX**

(1)     The death penalty is *per se* cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 186-87 (1976); *State v. Salazar*, 173 Ariz. 399, 411, 844 P.2d 566, 578 (1992).

(2)     Execution by lethal injection is *per se* cruel and unusual punishment. *State v. Hinchey*, 181 Ariz. 307, 315, 890 P.2d 602, 610 (1995).

(3)     The statute unconstitutionally requires imposition of the death penalty whenever at least one aggravating circumstance and *no* mitigating circumstances exist. *Walton v. Arizona*, 497 U.S. 639, 648 (1990); *State v. Miles*, 186 Ariz. 10, 19, 918 P.2d 1028, 1037 (1996).

(4)     The death penalty is unconstitutional because it permits jurors unfettered discretion to impose death without adequate guidelines to weigh and consider appropriate factors and fails to provide principled means to distinguish between those who deserve to die or live. *State v. Johnson*, 212 Ariz. 425, 440 ¶ 69, 133 P.3d 735, 750 (2006).

(5)     Arizona's death statute unconstitutionally requires defendants to prove that their lives should be spared. *State v. Fulminante*, 161 Ariz. 237, 258, 778 P.2d 602, 623 (1988).

(6)     The statute unconstitutionally fails to require the cumulative consideration of multiple mitigating factors or require that the jury make specific findings as to each mitigating factor. *Gulbrandson*, 184 Ariz. at 69, 906 P.2d at 602.

(7)     Arizona's statutory scheme for considering mitigating evidence is unconstitutional because it limits full consideration of that evidence. *Mata*, 125 Ariz. at 242, 609 P.2d at 57.

(8)     The statute is unconstitutional because there are no statutory standards for weighing. *Atwood*, 171 Ariz. at 645-46 n.21(4), 832 P.2d at 662-63 n.21(4).

(9)     Arizona's death statute insufficiently channels the sentencer's discretion in imposing the death sentence. *State v. Greenway*, 170 Ariz. 151, 164, 823 P.2d 22, 31 (1991).

63

(10)    The prosecutor's discretion to seek the death penalty unconstitutionally lacks standards. *Cromwell*, 211 Ariz. at 192 ¶ 58, 119 P.3d at 459.

(11)    Death sentences in Arizona have been applied arbitrarily and irrationally and in a discriminatory manner against impoverished males whose victims have been Caucasian. *State v. West*, 176 Ariz. 432, 455, 862 P.2d 192, 215 (1993).

(12)    The Constitution requires a proportionality review of a defendant's death sentence. *Gulbrandson*, 184 Ariz. at 73, 906 P.2d at 606.

(13)    Subjecting Appellant to a second trial on the issue of aggravation and punishment before a new jury violates the double jeopardy clause of the Fifth Amendment. *Ring III*, 204 Ariz. at 550 ¶ 39, 65 P.3d at 931.

(14)    Appellant's death sentence is in violation of his rights to a jury trial, notice and due process the Fifth, Sixth and Fourteenth Amendments since he was not indicted for a capital crime. *McKaney v. Foreman*, 209 Ariz. 268, 271 ¶ 13, 100 P.3d 18, 21 (2004).

(15)    Imposition of a death sentence under a statute not in effect at the time of Appellant's trial violates due process under the Fourteenth Amendment. *Ellison*, 213 Ariz. at 136 ¶ 85, 140 P.3d at 919.

(16)    The absence of notice of aggravating circumstance prior to Appellant's guilt phase violated the Sixth, Eighth and Fourteenth Amendments. *Anderson II*, 210 Ariz. at 347 ¶¶ 79–80, 82, 111 P.3d at 389.

(17)    The reasonable doubt jury instruction at the aggravation trial lowered the state's burden of proof and deprived Appellant of his right to a jury trial and due process under the Sixth and Fourteenth Amendments. *Dann I*, 205 Ariz. at 575–76 ¶ 74, 74 P.3d at 249–50.

(18)    Arizona's death statute creates an unconstitutional presumption of death and places an unconstitutional burden on Appellant to prove mitigation is "sufficiently substantial to call for leniency." *State v. Glassel*, 211 Ariz. 33, 52 ¶ 72, 116 P.3d 1193, 1212 (2005).

(19)    The introduction of victim impact evidence is improper

64

because a defendant does not receive pretrial notice or an opportunity to confront and cross examine the victim witness. *Lynn*, 205 Ariz. at 191 ¶ 16, 68 P.3d at 417.

(20)   The trial court improperly omitted penalty phase instructions that the jury could consider mercy or sympathy in evaluating the mitigation evidence and determining whether to sentence the defendant to death.  *Carreon*, 210 Ariz. at 70-71 ¶¶ 81-87, 107 P.3d at 916-17.

(21)   Arizona's *current* protocols and procedures for execution by lethal injection constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *Andriano*, 215 Ariz. at 510 ¶¶ 61-62, 161 P.3d at 553.

(22)   The jury instruction that required the jury to unanimously determine that the mitigating circumstances were "sufficiently substantial to call for leniency" violated the Eighth Amendment.  *Ellison*, 213 Ariz. at 139 ¶¶ 101-102, 140 P.3d at 922.